904 S.W.2d 50 (1995)
L.A.L., Petitioner/Appellant,
v.
L.L., Respondent/Respondent.
No. 66639.
Missouri Court of Appeals, Eastern District, Division Three.
July 11, 1995.
Rehearing Denied August 23, 1995.
*51 Merle L. Silverstein and Jill A. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Clayton, for appellant.
Daniel R. Sokol, Rothman, Sokol, Adler & Sarachan, P.C., Leigh Joy Carson, St. Louis, for respondent.
CRANDALL, Judge.
Wife, L.A.L., appeals from the decree of dissolution of her marriage to husband, L.L. We affirm as modified.
Husband and wife were married in 1967. They separated in 1990. Three children were born of the marriage. At the time of *52 the dissolution in 1994, the ages of the children were 22, 19, and 14. The youngest child resided with wife in the marital home. The two older children were college students and lived on campus during the school year.
Husband was 48 years of age and self-employed. Although he owned and operated two dress shops for a period of time during the marriage, he owned only one at the time of the dissolution. Husband testified that sales and profits from the dress shop, as well as his salary, declined for five years prior to the dissolution. Husband's accountant testified that over that same five-year period, sales at the dress shop, although stable, demonstrated a downward trend.
During the marriage, husband gave wife one of his bi-monthly paychecks of approximately $1,800.00 to cover her and the family's expenses and kept the other paycheck for himself. He also gave her at least $500.00 per week in cash for other expenses. At the time of the dissolution, however, husband had not taken a paycheck from the dress shop for five months. To meet his expenses, husband took loans from the dress shop totalling $60,000.00. Husband's income for 1993 was $36,000.00. In addition to the dress shop, husband owned commercial property which provided him with rental income. The trial court found that his gross income from both sources was $5,850.00 per month. Husband's IRA account was valued at $124,302.00.
At the time of the dissolution, husband had moved from a one-bedroom apartment on which he had been paying $525.00 in rent to a four-bedroom home valued at about $320,000.00. His brother owned the house; and although the monthly rent was $1,700.00, husband stated that he did not always pay it. Husband justified the expenditure of $1,700.00 per month in rent because he "wanted a nice place to live" and because each of the children needed a bedroom when they visited him.
Husband took buying trips to New York City 5 to 6 times each year, for 10 to 12 days at a time. He frequently came home late from work and was absent from his business for periods of time during the day. From the time of his engagement to wife and continuing throughout the marriage, husband admitted to having engaged in extramarital affairs, one with the manager of his dress shop. He refused to fire the manager when wife requested that he do so. Husband testified that he was receiving therapy for sexual addiction and was participating in a twelve-step recovery program.
Wife was 48 years of age. She worked full-time during the first six years of the marriage, teaching in a public school system. She was a college graduate and had a masters degree in education. She quit teaching to care for the children. Following her first separation from husband in 1987, wife returned to the work force as a part-time preschool teacher. For two years prior to the dissolution, she worked as a full-time teacher's assistant in a public school district. Although she attempted to find employment as a teacher, she was unable to secure such a position. The trial court found that her gross income per month was $1,140.00. Wife had two IRA accounts, one in the amount of $25,470.00 and one in the amount of $7,799.00.
Throughout the marriage, husband and wife enjoyed an affluent lifestyle. They lived in a four-bedroom, fully furnished home. The home was valued at about $200,000.00 and was unencumbered by indebtedness. For seventeen years of the marriage, wife had a cleaning lady once a week. The family took yearly vacations at exclusive resort areas of Florida. The children attended summer camps. Husband described wife as spoiled and "pampered."
Each of the two older children attended a university where the tuition was expensive. Wife had not consulted husband about the choice of university by either child. Since the separation, wife's parents had given her money, for a total of about $100,000.00, to help with expenses, primarily those associated with college tuition. Wife testified that these monies were loans, but acknowledged that it was unlikely they would be repaid. Husband testified that his precarious financial situation precluded him from helping with the children's tuition.
*53 On April 26, 1994, the trial court entered the decree of dissolution, setting aside to each party his or her separate property and dividing the marital assets. In addition to two cars, a speed boat, and two trailers, husband received stock in the dress shop business (valued at $45,000.00), commercial rental property (valued at $200,000.00), his IRA account, and the $60,000.00 debt to the dress shop. Wife received the marital home, household goods in that home, and her two IRA accounts. Husband was ordered to pay wife $64,142.00, either in cash or in a rollover of his IRA. In addition, the court ordered husband to pay wife child support of $405.00 per month for each of the two minor children and maintenance of $200.00 per month. The court was silent as to husband's responsibility for tuition costs. The court held each party responsible for his or her own attorney's fees.
Appellate review of a court-tried case is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976).
In her first point, wife contends the trial court's award of maintenance of $200.00 per month was inadequate, because it was against the weight of the evidence and did not reflect sufficient consideration of the statutory factors.
Section 452.335, RSMo (1994) governs spousal maintenance orders. Section 452.335.1 provides that a court may grant maintenance to a spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment. Section 452.335.2 sets out the statutory factors the trial court must consider in awarding maintenance:
(1) The financial resources of the party seeking maintenance, ... and his ability to meet his needs independently ...;
(2) The time necessary to acquire sufficient education or training to ... find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property ... and the separate property ...;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.
The spouse seeking maintenance is required to show need before maintenance may be awarded. Jones v. Jones, 866 S.W.2d 507, 509 (Mo.App.E.D.1993). The trial court has broad discretion in determining the amount of a maintenance award and the appellate court will not interfere unless it appears that the trial court has abused that discretion. Francis v. Francis, 823 S.W.2d 36, 39 (Mo.App.1991).
Husband's comparative earning capacity, one factor in determining the maintenance award, was greater than wife's at the time of dissolution. The trial court found that husband's monthly income was $5,850.00 and wife's was $1,140.00. In his brief, husband sets forth the disparity in income as follows: "After payment of the ordered child support and maintenance, Husband's pre-tax income will be $4,435.00 per month and Wife's pre-tax income will be $2,555.00 per month."
Wife was employed as a teacher's assistant, a job for which she was overqualified and which paid less than a teacher's salary. Although wife had an affirmative duty to seek adequate employment to enable her to become self-sufficient, see Francis, 823 S.W.2d at 39, there was no evidence in the record to suggest that a change in wife's employment situation was imminent. Her educational background and six year's teaching experience were indicia of her qualifications for a teaching position. Other factors, however, including her age and her prolonged absence from the teaching profession, *54 weighed against her securing a teaching position. Also, the record reveals that her on-going efforts to secure a more lucrative teaching position had proven unsuccessful. The detrimental effect of wife's withdrawal from the job market to assume the duties of a homemaker, which ultimately resulted in her being unable to provide for her reasonable needs, was a sound basis for the court's award of maintenance. See Jones, 866 S.W.2d at 509.
As to husband's earning capacity, there was evidence that business at the dress shop was experiencing a downward trend and that he had not been paid for five months preceding the dissolution. Yet, his earnings for the year prior to dissolution had not changed dramatically from that of previous years. At the time of the dissolution, evidence regarding his business prospects was speculative at best and could not serve as the basis for accurately forecasting his future income. Husband also had improved his standard of living by moving into a large house for which his monthly rent payment was $1,700.00, which he admitted he paid only sporadically.
Another factor in determining maintenance is the standard of living during the marriage. Although maintenance need not permit a continuation of a prior standard of living, that lifestyle, together with the length of marriage, are factors to be considered; and the standard of living provides evidence of what the parties have determined their reasonable needs to be. In re Marriage of Torix, 863 S.W.2d 935, 939 (Mo.App.S.D.1993). Here, the family enjoyed an affluent lifestyle. The family lived in a large home that was fully furnished and free of debt. The family took expensive vacations. Husband gave wife $1,800.00 per month, plus a minimum of $500.00 per week, for expenditures relating to the home, the children, and herself. The two older children attended costly universities and lived away from home. The standard of living factor is of particular importance where, as here, the marriage was one of long duration. See Weiss v. Weiss, 702 S.W.2d 948, 956 (Mo.App.1986). Furthermore, wife conceded that she did not expect to continue her prior standard of living and that neither she nor husband would "enjoy the same standard of living as they did when they were married...."
Regarding the duration of marriage factor, additional significance attaches thereto where one spouse, while taking care of the home and rearing the children born of the marriage, forgoes development of his or her career and the attendant advances and salary increases which could reasonably be expected during that period of time; and where the other spouse is free to advance his career or business and to enjoy the benefits therefrom. Weiss, 702 S.W.2d at 956.
Marital misconduct is another factor in determining maintenance, but only when the offending spouse's conduct placed extra burdens on the other spouse. Yount v. Yount, 821 S.W.2d 876, 881 (Mo.App.1991). Here, husband admitted to having numerous illicit relationships with other women throughout the course of his long marriage to wife. In contravention of wife's wishes, he did not fire the manager of his dress shop with whom he had engaged in a sexual relationship. He spent a great deal of time away from home. Based upon the extent and duration of husband's misconduct during the course of the marriage, his conduct imposed additional burdens upon wife.
The award of marital property is another factor in determining maintenance. See Jones, 866 S.W.2d at 509. Although wife received marital property which included the marital home, her IRA's, and $64,142.00, she was not required to deplete her portion of the marital assets before being entitled to maintenance. See Id.
Wife's monthly expenses equalled $5,190.00. Husband did not contest these expenses and there was no finding by the trial court that they were unreasonable. Husband even testified that he did not know how wife could reduce her expenses. The maintenance of $200.00 awarded by the trial court, plus the child support of $910.00 and her earnings of $1,140.00, resulted in wife's having approximately $2,940.00 less income than expenses each month. Under the circumstances of this case, we find the trial court abused its discretion in setting the *55 amount of maintenance payable to wife. Wife's first point on appeal is granted.
Under Rule 84.14, the appellate court which believes the trial court has abused its discretion may enter the judgment the trial court should have entered, effective at the time of the decree. Torix, 863 S.W.2d at 941. Accordingly, the decree is modified to increase the maintenance award to a total of $1,000.00 per month. The effective date of this judgment shall be April 26, 1994, the date of the decree from which this appeal was taken.
In her second point, wife contends the trial court erred in failing to award her attorney's fees. Section 452.335, RSMo (1994) permits, but does not require, a trial court to award attorney's fees. As a general rule, the parties to a dissolution are to pay their own attorney's fees. Mistler v. Mistler, 816 S.W.2d 241, 256 (Mo.App.1991). The appellate court will overturn the trial court's order only upon a showing that the trial court abused its broad discretion in ordering, or refusing to order, one party to pay the attorney's fees of the other party. Id. To demonstrate an abuse of discretion by the trial court, the complaining party has the burden to show that the order for attorney's fees is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and to indicate a lack of deliberation. Id.
We have reviewed the record and find that the court did not abuse its discretion in refusing to order husband to pay wife's attorney's fees. In the pendente lite order, wife was awarded $3,500.00 of her attorney's fees as well as $2,000.00 for expenses. In the decree of dissolution, wife received the family home which was debt-free and sufficient assets from which she would be able to pay her attorneys. See Mistler, 816 S.W.2d at 254. Wife's second point is denied.
In her final point, wife claims error in the trial court's failure to require husband to pay any part of the college expenses for the children. The court may order the parental support obligation to continue until the child "completes his [higher] education, or until the child reaches the age of twenty-two, whichever first occurs...." § 452.340.4, RSMo (1994). In determining the proper amount of child support, the trial court balances the needs of the child against the ability of the non-custodial parent to pay. Weaks v. Weaks, 821 S.W.2d 503, 507 (Mo. banc 1991). The trial court is in the best position to determine whether the non-custodial parent is financially capable to help support the child's college expenses. Leahy v. Leahy, 858 S.W.2d 221, 226 (Mo. banc 1993).
Here, wife does not contest husband's assertion that the trial court's award of child support is based upon the Form 14 calculation. Rule 88.01(e) establishes a rebuttable presumption that child support calculated pursuant to Form 14 is the amount to be awarded by the trial court. That rule also provides that a court may rebut the presumption if the court enters a written or specific finding on the record that the Form 14 amount, after considering all relevant factors, is unjust or inappropriate.
In the case before us, there was no finding on the record that the Form 14 amount was unjust or inappropriate. Further, the record does not indicate that wife requested the trial court either to include college expenses in the Form 14 calculations or to make a finding that the Form 14 amount was unjust or inappropriate. The trial court did not abuse its discretion in failing to order husband to pay a portion of the children's college expenses. Wife's third point is denied.
The decree is modified to increase the award of maintenance to wife to $1,000.00 per month, effective April 26, 1994. In all other respects, the decree is affirmed.
CRANE, P.J., and DOWD, J., concur.