In re the MARRIAGE OF BAKER.

Richard H. Baker, Petitioner–
Respondent,

v.

Mary Sue Baker, Respondent–Appellant.

No. 21897.

Missouri Court of Appeals,
Southern District,
Division Two.

March 23, 1999.

Mark J. Millsap, Baird, Lightner & Millsap, Springfield, for appellant.

June Clark, Carmichael, Gardner & Clark, Springfield, for respondent.

KENNETH W. SHRUM, Presiding Judge.

Mary Sue Baker (Wife) appeals from a judgment dissolving her marriage to Richard H. Baker (Husband). Wife challenges those

portions of the judgment that limited her maintenance award to $100 per month, divided the parties' marital property, and denied her request for attorney fees. We affirm the trial court's division of property and decision regarding attorney fees. We modify the maintenance award by increasing it to $400 per month, effective August 14, 1998.

## FACTS

The parties were married on June 9, 1962. They separated on May 1, 1995, and Husband filed a petition for dissolution. Two children were born of the marriage: Christina, born October 8, 1971, and Richard, born October 9, 1973. Richard is emancipated and no longer lives with either parent. Christina, who is severely physically and mentally disabled, functions at the level of a nine-to thirteen-month-old child.[1] She cannot walk, talk, or care for herself. Someone must care for Christina twenty-four hours a day. She is incontinent (bowel and bladder) and must wear diapers at all times, she must be dressed and fed by others, and she moves about via wheelchair or by crawling. There is little or no expectation that Christina can develop further.

Wife, born September 12, 1942, finished high school and has a few college hours. Her work history began with a telephone company in California where she worked for thirteen years. After Richard was born, she quit that job to care for the children. In 1978, Husband and Wife moved to Springfield, Missouri. Two years later, Wife started working part time for Easter Seals. In 1981, she returned to full-time employment, first as a medical records assistant and then as a secretary. At the time of trial, Wife was working in the medical records office of a local hospital. In this job, she worked forty hours per week, 8:30 a.m. to 5:00 p.m., Monday through Friday, and earned $8.62 per hour. It is essential that Wife work only the assigned hours because her schedule must coordinate with those of the agencies and their personnel who assist her in caring for Christina.

Husband, born December 2, 1940, graduated from high school and attended one year at a community college. He had worked in the retail food and beverage business since high school. At the time of trial, he managed the liquor department of a local supermarket. As a salaried employee, he worked 7:00 a.m. to 6:00 p.m., Monday through Saturday, with Thursday afternoon off. He also worked most holidays. His salary was $525 per week. He also received quarterly bonuses that varied in amount and were not guaranteed. Husband's gross employment income in 1996 was $32,941.

At time of trial, Husband's health was good. In contrast, Wife had "degenerative knee syndrome," for which she received cortisone injections. She also had "bilateral carpal tunnel syndrome" and "fibromyalgia." She regularly took medications to treat fluid retention and depression. Although Wife's medical conditions did not prevent her from working, she claimed they restricted her job selections.

Since the parties' separation, Christina has been cared for as follows. Each morning, Wife gets Christina up, dresses her, and fixes her a meal. During the week, Christina is picked up at approximately 7:10 a.m. and taken to Adult Tendercare where she remains until 3:45 p.m. Adult Tendercare is an adult day-care center for mentally and physically disabled persons operated by Dr. Clarence Ketch. Although Adult Tendercare ordinarily would not transport Christina to and from its facilities, Dr. Ketch was, at the time of trial, gratuitously transporting Christina back and forth as a favor to the family. When Christina gets home around 3:45 p.m., she is cared for by a firm called Family and Friends. Missouri's Division of Aging pays for this service. The service is limited, however, to only two hours of caregiving per day. Consequently, Wife has had to arrange her schedule so she can be home by 5:45 p.m.

Part of Christina's care is also provided through a program known as "respite care," which works as follows. Wife pays $21.50

---

1. Apparently, Christina's condition stemmed from an adverse reaction to a DPT inoculation during her infancy.

per month and receives twenty-three hours of caregiver assistance each month. The balance of the caregiver's fees are subsidized by the Greene County Developmental Disability Board. Wife generally uses the respite time to "get her hair done," run errands, grocery shop, or go to Branson.

Since the parties' separation, Wife has stayed with and cared for Christina at all times except when Christina has been cared for by Adult Tendercare, Family and Friends, respite caregivers, or private caregivers hired by Wife. Wife normally pays $5.00 per hour for private caregivers.

At the time of trial, Christina's financial needs were being met through (1) Wife's employment income, (2) the agencies described above, and (3) Christina's monthly SSI check for $484.

We set forth additional facts as necessary in the discussion of Wife's points relied on.

## THE DECREE

The court awarded Husband personal property classified as marital valued at $71,212.23. This award consisted largely of Husband's vested retirement accounts, i.e., a pension fund through a union in California, valued at $55,310, and a 401(k) plan with Husband's current employer, valued at $6,439.61. The court ordered Husband to pay $20,187.66 in debts. Husband's nonmarital property was valued at $1,345.

Wife's award of marital personal property was valued at $35,900.30. This award contained no income-producing property. The only item of significant value was Wife's pension fund, valued at $29,942. The court ordered Wife to pay $3,253.68 in debts. Wife's nonmarital property was valued at $500.

The court ordered the marital home sold, with proceeds to be disbursed in the following order: (1) pay costs of sale including broker's fee, (2) pay current and past real estate taxes, (3) pay the deed of trust lien, (4) reimburse Husband for house payments made from the date of the decree to the date of sale, (5) pay Wife $18,378 "to make the division of all marital property more equitable," and (6) divide the remaining balance equally between Husband and Wife.

With regard to Christina, the court found her unemancipated due to her disability. The court awarded Husband and Wife joint legal and physical custody of Christina but apportioned the greater share of physical custody to Wife. The court adopted Husband's Form 14 calculation of child support but deviated therefrom and imposed no support obligation "because of the Social Security Administration policy of off setting S.S.I. benefits for money paid by a non-custodial parent." The court ordered Husband to pay all of Christina's medical expenses not covered by insurance, Medicare, or Medicaid.

With regard to Wife's request for maintenance, the court found:

"a. [Wife] has requested $500 per month as periodic maintenance and the Court finds that to meet her reasonable needs that request is reasonable given her income and expenses. However the Court finds that [Husband] given his income and expenses has only limited ability to pay periodic maintenance. The Court notes that both parties have borrowed from relatives and [Husband] has borrowed from a 401–K fund to meet ordinary expenses. The Court does not have a solution for the parties maintaining 2 households with the income that is presently available."

"b. That [Wife] lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and is unable to support herself through appropriate employment, and that after considering all relevant factors including those set out in Section 452.335 RSMo., that [Husband] should pay $100 periodic maintenance . . . ."

The court also denied Wife's request for an award of attorney fees.

## SCOPE OF REVIEW

■ Our review is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Mistler v. Mistler*, 816 S.W.2d 241, 245[1] (Mo.App.1991). Thus, we must affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it

erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32[1]. Within the confines of the law and the evidence, the trial court has sound discretion in awarding maintenance, *Franke v. Franke*, 747 S.W.2d 202, 203 (Mo.App.1988); dividing marital property, *In Re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990); and awarding attorney fees, *Mistler*, 816 S.W.2d at 256[18]. On these matters, we review for an abuse of discretion.

## DISCUSSION AND DECISION

### Maintenance

In her first point on appeal, Wife lists the following reasons in support of her claim that the trial court's award of $100 per month maintenance was a misapplication of the law, an abuse of discretion, not supported by substantial evidence, and against the weight of the evidence:

(a) she has reasonable monthly expenses for herself and Christina totaling $2,423 and a net monthly income of only $935 plus Christina's $484 to provide for their reasonable needs;

(b) she has a limited earning capacity due to her lack of formal education;

(c) she is fifty-four years old and has physical impairments that restrict her daily activities and "impair her continued gainful employment and additional employment;"

(d) she is the custodian of Christina who is severely physically and mentally handicapped and totally dependent on Wife for full-time care; thus Wife is precluded from holding other jobs to supplement her monthly income;

(e) she received no income-producing property in the court's division of marital property;

(f) she receives no child support from Husband to aid in supporting Christina.

Wife characterizes Husband's situation as follows:

(a) he has the means and ability to pay $500 per month maintenance, as requested, as his average gross monthly income is $2,750, and he claimed only $1,542 in monthly expenses;

(b) he is not obligated to pay child support;

(c) he has significantly greater income-earning potential by reason of his health and experience in the retail grocery/liquor store management business; and

(d) he can earn supplemental income through additional employment as he is not the primary physical custodian for Christina.

Maintenance awards are governed by § 452.335,[2] which, for convenience, is reproduced marginally.[3] Under this statute, a trial court can award maintenance only if it

---

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

**3.** In pertinent part, § 452.335 provides:

"1. [T]he court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

"(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

"(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

"(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(3) The comparative earning capacity of each spouse;

"(4) The standard of living established during the marriage;

"(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

"(6) The duration of the marriage;

"(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

"(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

"(9) The conduct of the parties during the marriage; and

"(10) Any other relevant factors."

first determines that the reasonable needs of the party seeking maintenance cannot be met by some combination of the party's income and/or property—including marital property assigned to him or her. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 856 (Mo.App. 1977). If the court concludes that the party's income and property are inadequate to satisfy his or her reasonable needs and that an award of maintenance is appropriate, then the court must consider the factors delineated in § 452.335.2 and balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay. *Id.* See *Bixler v. Bixler*, 810 S.W.2d 95, 99–100[7] (Mo.App.1991).

█ The trial court found that Wife's reasonable needs could not be met by a combination of "appropriate employment" and her property award. The court also found that Wife's request for $500 per month was "reasonable given her income and expenses." Neither party challenges these findings as erroneous, and we do not find any error in that regard. Consequently, the question we must answer is: Did the trial court abuse its discretion in setting the maintenance award at $100 per month? We believe it did.

*Husband's comparative earning capacity,* one factor in deciding maintenance amount, was greater than Wife's at the time of dissolution. Husband presented evidence that his gross income was $525 per week ($27,300 annually), but his 1996 tax return showed employment income of $32,941. The discrepancy in these amounts stemmed from Husband's failure to include his bonuses in the forms filed with the court. Husband explained that he omitted the bonus amounts because they were not guaranteed. He admitted, however, that he had received bonus pay every quarter except one in the two-year period preceding trial.

█ All resources available to a party—not just salary—should be considered when determining a party's ability to pay maintenance. *Jung v. Jung*, 886 S.W.2d 737, 741[9] (Mo.App.1994). "[N]othing is exempt from consideration." *Id.* Although maintenance awards cannot be based on mere speculation, *In re Marriage of Liljedahl*, 942 S.W.2d 919, 924[8] (Mo.App.1996), courts must look at past and present income *in toto* and consider a party's complete earning history as evidence of ability to pay maintenance. See *Crews v. Crews* 949 S.W.2d 659, 666[22] (Mo. App.1997); *Lawrence v. Lawrence*, 938 S.W.2d 333 (Mo.App.1997).

Here, Husband enjoyed good health and possessed superior managerial skills, as evidenced by his testimony that he was the highest paid liquor department manager in the company. Husband's gross annual income for 1996 was $32,941, whereas Wife's gross income that year was $16,364. Moreover, there was no evidence to suggest that a change in Wife's employment situation was imminent. Her educational background and limited range of work experience were indicia that her job choices were limited. Other factors also weigh against Wife finding more lucrative employment either by changing jobs or through additional education or training. Among these factors are Wife's age and health, as well as constraints imposed on her as Christina's primary caregiver.

As to Wife's financial resources, her only significant asset is the equity in the marital home the trial court awarded her. Wife stated her intent to use that money as a downpayment on another home. Wife's need for a home—not an apartment—can hardly be questioned given her role as the primary physical custodian of Christina. Neither of the two motor vehicles awarded Wife was operable, nor was it economically feasible to repair them. One of the vehicles was valued at $100, while the other was assigned zero value. At the time of trial, Wife's friends and co-workers provided her transportation. Wife receives no child support because any such payment from Husband would adversely affect Christina's SSI benefit and Medicaid coverage. In summary, Wife has no income-producing resources (unless she were to invest the proceeds from the sale of the marital home) and has only her employment income and Christina's $484 monthly SSI benefit to meet Christina's and her needs.

█ The standard of living established during marriage and length of marriage are, of course, relevant factors. For example, in *Brueggemann,* the court said, "In a marriage

of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide." 551 S.W.2d at 857[4]. Wife's job opportunities and career development have been restricted in that her work schedule must coordinate with the schedules of those who help care for Christina. Husband, on the other hand, has been free to advance his career, obtain a management position, work the longer hours required of a manager, and enjoy the benefits therefrom. *See L.A.L. v. L.L.*, 904 S.W.2d 50, 54[8] (Mo.App.1995). As important as these factors are, however, they do not compel an award of maintenance sufficient to meet all of Wife's needs. *Rasmussen v. Rasmussen*, 627 S.W.2d 117, 120[6] (Mo.App.1982).

It does not appear that this couple enjoyed a particularly extravagant lifestyle. Their only apparent indulgence was the purchase of a more expensive home. Even that decision may have been motivated in part by the couple's desire to provide a better life for Christina. Although the standard-of-living factor is germane to this case since the parties' marriage was of long duration, *L.A.L.*, 904 S.W.2d at 55[7], Wife does not claim that the trial court erred in ordering the house sold. We do not believe Wife expects to maintain the same standard of living she enjoyed before the dissolution, nor do we believe she envisions owning a home as large or as expensive as the one she enjoyed during marriage. Nevertheless, Wife repeatedly testified that she needed some type of house to accommodate Christina.

■ Although marital conduct is a factor to consider in fixing a maintenance amount, it should only be taken into account when the offending party's conduct places extra burdens on the other spouse. *Id.* at 54[9]. Wife's complaints about Husband's marital conduct primarily concerned (a) their different views on what was acceptable behavior for Richard when he was still at home, (b) her perception that Husband was too "controlling," and (c) Husband's admitted illicit relationship with another woman after the parties separated. Husband, on the other hand, complained that Wife's devotion to, expenditures for, and activities related to the Wayne Newton fan club led to the end of their marriage. Notwithstanding these complaints, the trial judge declared that the parties' conduct was "not a factor in the division of the marital property," and, from that statement, we presume that he did not find either party's conduct to be a significant factor in setting the maintenance award at $100. This court agrees with that assessment.

Apparently, the trial court's greatest concern about the maintenance amount was Husband's "limited ability to pay." Husband's income and expense statement listed his average net monthly income as $1,492.72 and his average monthly expenses as $1,542.25. However, as mentioned above, Husband omitted bonus pay from his income and expense statement, even though he received such pay in both 1995 and 1996. His bonus pay in 1996 averaged $500 per month.

As to Husband's monthly expense list, it included installment payments of limited duration, i.e., $210 per month to pay a Discover credit card balance of $3,254.04 and a $41.20 monthly payment on a dental bill of $111.60. If paid as scheduled, the $41.20 monthly payment for dental care would be eliminated in three months and the $210 payment in eighteen months (even assuming an eighteen percent annual interest rate). Wife's monthly expenses totaled $2,423.16, while her net monthly income was $935 from work and $484 from Christina's SSI benefit. Certainly, the trial court was not required to accept Wife's statement of monthly expenses *in toto. In re Marriage of Cope*, 805 S.W.2d 303, 308 (Mo.App.1991). This is true even where Wife's evidence was uncontradicted. *See Johnson v. Gregg*, 807 S.W.2d 680 685[3] (Mo.App.1991). Moreover, Husband challenged certain items on Wife's expense statement and the trial judge voiced doubts on the record regarding Wife's "respite care" expenses. Even so, the trial judge found that Wife's reasonable needs exceeded her income by $500 per month. Husband does not challenge that finding. Under these circumstances, we find that the trial court abused its discretion in setting Wife's maintenance award at only $100. Wife's first point on appeal is granted.

Pursuant to Rule 84.14, when an appellate court finds the trial court has abused its discretion, it may enter the judgment the trial court should have entered, effective at the time of the decree. *L.A.L.,* 904 S.W.2d at 55[11]. Accordingly, we modify the decree to increase Wife's maintenance award to $400 per month. The effective date of this judgment shall be August 14, 1998.

*Division of Marital Property*

■ Wife's second point charges that the trial court erred in dividing the net proceeds anticipated from the sale of the marital home.

Both parties valued their marital home at $150,000. They also agreed that the mortgage balance was $66,372, leaving $83,628 equity before costs. Wife estimated her net share of the sale proceeds at $45,000 under the court's division, whereas she would have received $55,000 had the court awarded her seventy-five percent of the equity as she requested.[4] In essence, Wife's argument is that the trial court abused its discretion, misapplied the law, or acted against the weight of the evidence when it awarded her approximately sixty-one percent of the net equity in the marital home rather than seventy-five percent. We disagree.

■ "The Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court." *In re Marriage of Gourley,* 811 S.W.2d 13, 15 (Mo.App.1991) (citing *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo.banc 1983)). This court must defer to the trial court's division of marital property unless it is improper under the principles of *Murphy v. Carron,* 536 S.W.2d at 32[1], or abuse of discretion is shown. *Gourley,* 811 S.W.2d at 15[1]. We presume the division of marital property is correct, and on appeal, the party challenging the division has the burden of overcoming the presumption. *Bixler,* 810 S.W.2d at 100[13].

■ A trial court's division of marital property does not have to be equal but it must be fair and equitable and consider the factors enumerated in § 452.330.1. *Mistler,* 816 S.W.2d at 252[8]. The § 452.330.1 factors to be considered in dividing marital property are: (1) the economic circumstances of each spouse at the time the division of property is to become effective, (2) the contribution of each spouse to the acquisition of marital property, including a spouse's contributions as homemaker, (3) the value of nonmarital property, (4) the conduct of the parties during the marriage, and (5) custodial arrangements for any minor children.

■ There is no formula respecting the weight to be given the relevant statutory factors. *In re Marriage of Harrison,* 657 S.W.2d 366, 370[4] (Mo.App.1983). Moreover, the factors listed in § 452.330.1 are not exclusive. *Mistler.* 816 S.W.2d at 252[9].

Here, the trial court had before it evidence of the parties' respective economic circumstances, including each party's capacity to work and earn. Neither party had significant nonmarital property. The court also heard testimony regarding the parties' conduct during marriage. Finally, the trial court heard evidence regarding each spouse's contributions to the acquisition of marital property.

■ As the reviewing court, we presume the trial court considered all the evidence when it divided the marital property. *S.L.J. v. R. J.,* 778 S.W.2d 239, 244[9] (Mo.App. 1989). The record supports that presumption here. We find no abuse of discretion by the trial court in awarding Wife an estimated $45,000 of the equity in the marital home rather than $55,000 of it. We deny Point II.

*Attorney Fees*

■ In Point III, Wife charges the trial court erred in refusing to order Husband to pay her attorney fees. She argues that her lack of financial resources, limited income, restricted earning potential, lack of child support, and limited maintenance, when compared to Husband's overall situation, compel

---

4. In using the figures of $45,000 and $55,000, Wife apparently estimated the costs of sale, taxes, and court-ordered reimbursement to Husband to be $10,000, leaving only $73,333 in equity to be divided.

an award of attorney fees to her. We disagree.

Section 452.355.1 authorizes an award of attorney fees in dissolution cases "after considering all relevant factors including the financial resources of both parties." Based on this statute, courts have consistently held that financial resources of the parties are relevant factors when ruling on a request for attorneys fees in divorce litigation. *See e.g., Calhoun v. Calhoun*, 934 S.W.2d 14 (Mo.App. 1996); *Ritter v. Ritter*, 920 S.W.2d 151 (Mo. App.1996).

■■■■ Section 452.355.1 permits but does not require a trial court to award attorney fees. *Mistler*, 816 S.W.2d at 256. "To require one party to pay the attorneys' fees of the other necessitates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his own litigation costs." *Echele v. Echele*, 782 S.W.2d 430, 441 (Mo.App.1989). Only on a showing that the trial court abused its broad discretion in refusing to order one party to a dissolution to pay the attorney fees of the other will an appellate court overturn the trial court order. *Mistler*, 816 S.W.2d at 256[18]. To show an abuse of discretion by the trial court in its attorney fee award, the complaining party has the burden to show that the order is " 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation.' " *Id.* at 256[19] (quoting *Ederle v. Ederle*, 741 S.W.2d 883, 885 (Mo.App.1987)).

■■■ Wife emphasizes her need for attorney fees, arguing that her only source of funds to pay fees is from the sale of the marital home and that preserving that money is essential if she is to acquire a new home

for Christina and her. Even so, the financial state of a party seeking an attorney fee award is only one factor to consider. *Kieffer v. Kieffer*, 590 S.W.2d 915, 918[6] (Mo.1979). Whether or not Wife can pay her attorney is not determinative. *See Telge v. Telge*, 677 S.W.2d 403, 407[11] (Mo.App.1984). Moreover, the fact that Husband's income exceeds Wife's, standing alone, does not compel an award of attorney fees. *See Nelson v. Nelson*, 937 S.W.2d 753, 757 (Mo.App.1997). With the increase in maintenance we have ordered, even more of Husband's income will be absorbed. As the trial judge lamented: "The Court does not have a solution for the parties maintaining [two] households with the income that is presently available."

Considering Husband's various obligations, his lack of financial resources, and the scope of the trial court's discretion in such matters, we do not find the denial of Wife's request for attorney fees so unreasonable and arbitrary as to shock one's sense of justice or suggest a lack of deliberation. We find no abuse of discretion in the trial court's refusal to order Husband to pay Wife's attorney fees. Point III is denied.

The judgment is modified to increase the award of maintenance to Wife to $400 per month, effective August 14, 1998. In all other respects, the judgment is affirmed.

PARRISH and BARNEY, JJ., concur.