Julia M. APPLING, Appellant,

v.

Paul Matthew APPLING, Respondent.

No. ED 84086.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 15, 2005.

Daniel P. Card, II, Jefferson City, MO, for appellant.

Benicia Ann Baker–Livorsi, Michael A. Turken, St. Charles, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Wife, Julia M. Appling, appeals from the judgment of the trial court, dissolving her marriage to husband, Paul Matthew Appling. We affirm, as modified.

The parties were married in July 1983 and separated in July 2002. Three children were born of the marriage: a daughter in 1984; a son in 1989; and a daughter in 1992. Throughout the marriage, the parties moved frequently because of husband's job transfers. They lived in various cities in Missouri; in Atlanta, Georgia; and in Tampa, Florida. In 1997, the family moved to the St. Peters, Missouri area.

At the time of dissolution, wife was 42 years of age. She was a college graduate with a degree in office administration. During the early years of the marriage, wife worked as a secretary in the medical field. After her second child was born, she and husband agreed that she would remain home to care for the children. When the family moved to the St. Peters area, they bought a horse for their son and a pony for their younger daughter. The family began attending horse shows. Starting in the spring of 2002, wife was frequently away from home for horse shows. At the time of dissolution, wife was not employed and felt that she needed additional training before she could re-enter the work force.

Husband was a college graduate who worked in the telecommunications industry. His past annual earnings were

$125,473.00 in 1999; $160,386.00 in 2000; $133,620.00 in 2001; and $166,955.00 in 2002. In March 2003, husband's employment was terminated and he received $92,566.00 in severance pay. At the time of dissolution, husband was employed and was earning about $80,000.00 per year.

Wife filed a petition for dissolution of her marriage to husband and husband filed a cross-petition for dissolution. The trial court dissolved the parties' marriage. The court, *inter alia*, awarded wife non-modifiable maintenance of $1,500.00 per month for a period of 12 months. The court ordered the marital home sold and the net proceeds of the sale divided equally between husband and wife. The court divided certain marital property between the parties and set aside their separate property to each of them. The court awarded the son the horse and computer equipment and the younger daughter the pony. The court awarded the parties joint legal and physical custody of the children, but specified that son's primary residence should be with husband. After completing its own Form 14, the court found that the presumed child support amount was unjust and inappropriate. The court ordered husband to pay child support of $775.00 per month to wife as long as the elder daughter was living with wife, the younger daughter was living with father one week and with mother the next week, and the son was living with father; but reduced the child support to $400.00 per month when the elder daughter no longer lived with mother. The court ordered each party to be responsible for 50 percent of all medical expenses not covered by health insurance. The court ordered husband to pay 75 percent and mother to pay 25 percent of the children's post-secondary educational expenses. Wife appeals from that judgment.

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In her first point, wife contends that the trial court erred in awarding non-modifiable maintenance for a period of twelve months. She argues that because she required further education to re-enter the work force, it was speculative that she would be employed and self-sufficient within one year.

■ The trial court has broad discretion in determining the duration of maintenance and an appellate court will interfere only if the award is improper or an abuse of discretion. *Cohn v. Cohn*, 841 S.W.2d 782, 786 (Mo.App. E.D.1992). If there is a reasonable expectation of an impending change in the parties' financial condition rather than mere speculation as to such a change, an award of limited duration maintenance is proper. *Id.* A party is not required to wait to request modification until it is certain the spouse receiving maintenance will be self-sufficient. *Id.*

■ Here, wife had a college degree in office management. Although she had not been employed outside of the home since 1989, she had at least six years of work experience in the medical field prior to that time. The vocational expert, who evaluated wife and whose report was admitted into evidence, stated that a comprehensive one-year independent study course for medical transcription was available at the community college. He stated that for a medical transcriptionist the expected starting salary was $26,500.00 and that the job market was strong. He further opined that if wife chose merely to update her computer skills, she would be eligible for an entry-level administrative position, with the earning capacity of about $24,000.00 per year. Wife herself testified that she wanted to take a six-month course in medical terminology, but that she did not have the funds to do so. By giving wife mainte-

nance for a period of 12 months, the court provided wife with ample opportunity to complete her desired coursework and secure employment as well as the necessary funds to pay for additional education. Wife failed to prove that the court abused its discretion in concluding there was a reasonable probability that she could become self-sufficient within one year. Point one is denied.

■ In her second point, wife asserts that the trial court erred in awarding certain marital property to the parties' children. She specifically challenges the award of the 2000 Firebird Trans–Am automobile,[1] the horse "Three Steps Ahead," the pony "Comanche Charlie," the Dell home computer, the Cannon copier/fax, and the four-wheel ATV. She argues that the court lacked jurisdiction to award marital property to third parties. The parties disagree about whether to characterize the above-mentioned property as marital property owned by them or as nonmarital property owned by their children.

■ Section 452.330.1 RSMo 2000 states that in a proceeding for dissolution of marriage "the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property...." The statute gives the trial court broad power to divide and distribute marital property. *Randolph v. Randolph,* 8 S.W.3d 160, 168 (Mo.App. W.D.1999). The statute, however, does not give the trial court discretion to divide and distribute marital property to the parties' children. *Id.* Thus, it was error for the trial court to award the property at issue to the parties' children. Wife's second point is granted.

■ An error in classifying property, however, is not necessarily prejudicial error. *Judy v. Judy,* 998 S.W.2d 45, 53 (Mo.App. W.D.1999). This court is not to reverse a judgment unless error was committed materially affecting the merits of the action. *Id.* The erroneous characterization of property requires reversal of the division of marital property if the error materially impacts the overall distribution of marital property. *Id.*

■ In the present action, wife testified that the four-wheel ATV belonged to husband. Her proposed division of property, which was admitted into evidence, valued the ATV at $4,000.00 and suggested that it be awarded to husband. Wife's proposed division of property did not include the Dell computer, the Cannon copier/fax machine, the horse, or the pony. Her list of "HOUSEHOLD/PERSONAL GOODS," which was admitted into evidence, included the Dell home computer, valued at $900.00, and the Cannon copier/fax, valued at $350.00; but made no mention of the other items of property at issue. Husband testified that the horse belonged to his son and the pony belonged to his younger daughter. Mother testified that the horse belonged to her, not to her son. No evidence as to the value of either the horse or the pony was adduced. Yet, on appeal, husband posits that there was no prejudicial impact on the property division because "[t]he values in Wife's statement of property of the horses are minimal." In light of the distribution of property in excess of $800,000.00 to the parties and husband's implicit adoption of a "minimal" valuation of the horses, this court declines to find that the property at issue impacted on the overall distribution of the marital property.

Under Rule 84.14, when the appellate court believes the trial court has erred, it

---

1. Wife's claim of error regarding the automobile is moot, because the car has been sold with the parties' consent and the proceeds from the sale distributed to daughter.

may enter the judgment the trial court should have entered. *L.A.L. v. L.L.*, 904 S.W.2d 50, 55 (Mo.App. E.D.1995). Accordingly, the decree is modified to award husband the four-wheeler ATV; and to award wife the horse "Three Steps Ahead," the pony "Comanche Charlie," the Dell home computer, and the Cannon copier/fax.

In her third point, wife charges error in the trial court's Form 14 calculation to determine the presumed child support amount, because the calculation did not include imputed income to husband, unreimbursed medical expenses, and college expenses. Wife argues that without these amounts computed into the Form 14 calculation, the court could not make a finding that the presumed child support amount was unjust and inappropriate. The trial court rejected the Form 14 of each party and completed its own Form 14.

 We first address wife's argument relating to imputation of income to husband. In calculating child support, the trial court has discretion to impute income to an underemployed or unemployed parent. *Burton v. Donahue*, 69 S.W.3d 76, 79 (Mo.App. E.D.2001). A parent may not escape responsibility to his or her family by deliberately limiting his or her work to reduce income. *Id.* In order to avoid such a situation, a court, in proper circumstances, may impute income to a parent according to what that parent could earn by use of his or her best efforts to gain employment suitable to that parent's capabilities. *Id.* What constitutes the appropriate circumstances to impute income will depend on the facts and must be determined on a case-by-case basis. *Id.*

 In performing its Form 14 calculation, the court used husband's current monthly income of $6,666.00 or $80,000.00 annually, instead of using his average salary of $152,109.00 for the four years preceding the dissolution. The evidence was that husband's employment was terminated by his employer in the spring of 2003. At the time of dissolution in December 2003, he was employed, but at a salary less than his previous salary. There was no evidence that the termination by his previous employer was voluntary or that he actively attempted to reduce his income. Under these circumstances, the trial court did not err in refusing to impute income to husband.

We next address wife's argument relating to unreimbursed medical expenses. The trial court ordered wife to pay 50 percent of all medical expenses not covered by health insurance.

The directions and comments for use for completion of Form 14, Line 6d provide for the inclusion of "uninsured extraordinary medical costs" in the Form 14 calculation to establish the presumed child support amount. Comment A under Line 6d defines uninsured medical costs as "reasonable and necessary" and extraordinary medical costs as "predictable and recurring, such as expenses for dental treatment, orthodontic treatment, asthma treatment and physical therapy."

 In her amended statement of income and expenses, which was admitted into evidence, wife listed $175.00 in expenses for medical, dental, and drugs for the children in her custody. On appeal, she claims that this amount included $100.00 per month for orthodontic expenses for one of the children. There was, however, no evidence in the record as to the nature of these medical expenses. Thus, the record is devoid of any evidence to establish that the medical expenses were either "reasonable and necessary" or "predictable and recurring." If the expenses in question are not predictable and recurring, then the burden of requiring the

custodial parent to pursue the payment of the uninsured medical expenses from the non-custodial parent, under a separate order, would be slight and would not justify building in the payment of uninsured medical costs into the monthly child support obligation. *Keller v. Keller*, 18 S.W.3d 589, 599 (Mo.App. W.D.2000). Given the circumstances of this case, where the actual amount of the extraordinary medical expenses is unknown, the trial court did not err in failing to include an exact dollar amount for medical expenses for the children in its Form 14 calculation.

 Regarding the college expenses, section 452.340.5 RSMo 2000 provides that the child support obligation of a parent shall continue for a child enrolled in an institution of vocational or higher education provided certain conditions are met, until age twenty-one or until the child's education is complete, whichever occurs first. Thus, the payment of the reasonable expenses of a child, for whom an obligation of support is owed, for attending such an institution has been found to be a form of child support. *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 877 (Mo.App. W.D.2001). Such expenses, however, are not included in the calculation of the basis child support obligations. *Id.* The directions and comments for use in completion of Form 14, Line 6e, titled "Other extraordinary child-rearing costs," Comment A, provides, in pertinent part:

> Post-secondary educational expenses ... are not included in the schedule of basic child support obligations. These expenses *may* be included in Form No. 14 as an "other extraordinary child-rearing cost" if the parents agree or the court orders that the parents contribute to payment of these expenses.

(Emphasis added). In *Shiflett v. Shiflett*, 954 S.W.2d 489, 493–94 (Mo.App. W.D. 1997), the appellate court recognized that,

under the applicable directions and comments for completing the Form 14 worksheet, the inclusion of post-secondary expenses as "other extraordinary child rearing costs" in the trial court's calculation of the presumed child support amount was discretionary with the trial court. This approach is logical inasmuch as many times such expenses are not present expenses, but future expenses triggered upon enrollment at a later date, with the result that they cannot be reflected as part of a Form 14 calculation of the presumed child support amount. *Ricklefs*, 39 S.W.3d at 878. In light of the unique nature of post-secondary educational expenses as a component of child support, it is reasonable that, as an alternative to including such expenses in the trial court's Form 14 calculation, the present Form 14 scheme envisions a separate order of support. *Id.*

Here, the trial court did not include college expenses in its Form 14 calculation and it was not obligated to do so. The actual out-of-pocket costs for the children's college education was uncertain at the time of dissolution. At that time, only the oldest child was attending college and the cost of college for the two younger children was uncertain. Thus, the trial court entered a separate judgment in lieu of adding a specific dollar amount to the Form 14 calculation. *See, e.g., MacDonald v. Minton*, 142 S.W.3d 247, 253 (Mo.App. W.D.2004). The trial court did not abuse its discretion in failing to include college expenses in its Form 14 calculation. Wife's third point is denied.

 In her fourth point, wife challenges the trial court's requiring her to be responsible for 50 percent of the unreimbursed medical expenses.

Section 454.633.3 RSMo 2000 governs the payment of uncovered medical ex-

penses of a child by his or her parents and provides, in pertinent part:

> As between parents, responsibility for the child's care expenses that are not covered by a health benefit plan may be equitably apportioned between the parents by the court or the division, in percentage shares based on their income, or based on a written agreement of the parties. If the order or agreement fails to designate the shares applicable to the parents, then each parent shall be liable for fifty percent of such expenses.

As discussed above, Form 14 provides for the inclusion of extraordinary medical expenses in calculating the presumed child support amount; whereas, the payment of uncovered non-extraordinary medical expenses is to be handled by a separate order. Here, no evidence was adduced that extraordinary medical expenses were incurred for the children. As such, the court's order that wife pay 50 percent of the uncovered medical expenses was only for the payment of non-extraordinary medical expenses; and there was no indication in the record that such medical expenses were significant. The trial court did not err in ordering wife to pay 50 percent of the uncovered medical expenses. Wife's fourth point is denied.

In her fifth point, wife contends that the trial court abused its discretion in ordering her to be responsible for 25 percent of the college expenses.

 In reviewing an award of child support for post-secondary expenses, this court recognizes that the trial court is in the best position to determine the financial capability of a parent to assist in the support of the parent's child, including college expenses. *Ricklefs*, 39 S.W.3d at 878. The appellate court views the evidence and permissible inferences in the light most favorable to the decree and disregards all contrary evidence and inferences. *Id.* Deference is accorded the trial court unless the evidence is palpably insufficient to support it. *Id.* A parent's ability to pay and a child's needs are factors the court considers in determining whether to order the parent to pay a percentage of a child's post-secondary educational expenses. *Id.*

 In the instant action, when the trial court prepared its Form 14 calculation, it determined that wife's proportionate share of the parties' combined income was 24.75 percent. Thus, the court's order that wife pay 25 percent of the college expenses for the children reflected her share of the parties' income. Wife's fifth point in denied.

The judgment is modified to award husband the four-wheeler ATV; and to award wife the horse "Three Steps Ahead," the pony "Comanche Charlie," the Dell home computer, and the Cannon copier/fax. The judgment is affirmed, as modified.

CLIFFORD H. AHRENS, P.J., and NANNETTE A. BAKER, J., Concur.