Alesia Ann BEAL, Appellant,

v.

Ollie OUTLEY, III, Respondent.

No. WD 49502.

Missouri Court of Appeals,
Western District.

May 2, 1995.

Angela Habeebullah, Kansas City, for appellant.

Ollie Outley III, pro se.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

■ Alesia Ann Beal appeals the trial court's April 15, 1994, order modifying the March 6, 1992, judgment entered in the paternity action that declared her and Ollie Outley III the parents of two children and required Mr. Outley to pay to Ms. Beal $250 per month as his contribution for child support. Mr. Outley filed a motion for specific visitation of the two minor children born to the parties, and Ms. Beal counterclaimed for an increase in Mr. Outley's child support contribution. The trial court ordered specific visitation, increased the amount of child support, and ordered that the younger of the two children born to the parties cease attendance at his pre-school and that he be placed with Mr. Outley's mother in lieu of day-care. The trial court subsequently modified its order pursuant to Ms. Beal's motion to grant her discretion whether "to place the child in a day care program at her expense."[1] Ms. Beal appealed the trial court's decision.

Ms. Beal asserts two points on appeal. She claims the trial court erred by awarding child support in an amount less than that calculated as provided by Rule 88.01 utilizing civil procedure Form 14 without first making a finding that the amount required under Rule 88.01 is unjust or inappropriate. Secondly, Ms. Beal asserts that the trial court erred in calculating the amount of child support due from Mr. Outley by (a) using "the column on Form 14 for three children rather than the column for two children"; and (b) in failing to include day-care costs in the presumed child support calculation as required by Rule 88.01 and civil procedure Form 14 in ordering that D. Outley cease attendance at

pre-school and be placed with his paternal grandmother in lieu of day-care.

D. Outley was born to Ms. Beal on December 25, 1990, and O. Outley was born to her on August 20, 1986. As a result of the paternity action, Ollie Outley, III, was declared to be the biological father of the two children and an order of paternity was entered. The trial court awarded Ms. Beal $250 per month for child support and granted Mr. Outley reasonable visitation rights.

In August 1993, Mr. Outley filed a motion for specific visitation. Ms. Beal countered by filing a motion to increase child support. Mr. Outley asked the trial court for visitation with the children on alternate weekends and holidays, for Ms. Beal to have visitation with the children every Mother's Day and on her birthday anniversary, and for Mr. Outley to have visitation with the children every Father's Day and on his birthday anniversary. Mr. Outley asked for temporary custody of the minor children one week after Christmas as well as each June and July and for Ms. Beal to have visitation with the children alternate weekends during that time. Additionally, Mr. Outley asked that the court abate his child support payments during the months of June and July when the children, per his request, would be in his temporary custody. Mr. Outley also asked the court to allow him an income tax deduction for one of the minor children.

When the original paternity order was entered, Ms. Beal was employed at Taco Bell as an Assistant Manager earning $9 per hour. When the hearing pursuant to Mr. Outley's motion was conducted, Ms. Beal was not working at Taco Bell. New management had taken over the business, and she, and other managers, were discharged.

As Ms. Beal attempted to obtain other employment, she received unemployment compensation. Ultimately, she found employment through a temporary agency and worked for $5.75 per hour. The hours of her

---

1. The court's order modifying the original judgment was filed April 15, 1994. Ms. Beal's motion to modify the amending order was filed May 3, 1994, and the trial court filed its order altering the modifying order on May 25, 1994. More than thirty days elapsed following the entry of the order that modified the original judgment. The trial court lacked jurisdiction to alter the modifying judgment because more than thirty days had elapsed from the date it had been filed. Rule 75.01

employment varied from twenty-five to thirty-five hours per week.

Ms. Beal also experienced continuing day-care expenses for the care of her minor children. When the 1992 paternity order was entered, she had no day-care expenses. When the hearing on Ms. Beal's motion to modify occurred, D. Outley was enrolled in pre-school as was the elder son of the parties.

In the past, Mr. Outley's mother has cared for the children in a day-care capacity. She testified that she was available to provide such care as the children needed on a daily basis. Mr. Outley was averse to his younger son attending the day-care center in which he was enrolled, but he was willing to pay the day-care costs if his mother provided the care.

Both parties presented income and expense statements, statements of assets, and Form 14 worksheets. Ms. Beal asserted that her gross monthly income was $900. She makes $5.75 per hour. Mr. Outley asserted his gross monthly income was $2,252. Ms. Beal claimed her monthly expenses totaled $1,400. Mr. Outley's monthly expenses totaled $2,644, including expenses for a third child, four months old when the modification hearing occurred. Ms. Beal asked the trial court for child support in the amount of $677 per month, and Mr. Outley's completed Form 14 set forth an amount of $302 as child support.

Following the trial, the court ordered specific visitation, increased the amount of child support, and ordered D. Outley's attendance at the day-care center to cease and for him to be placed with his paternal grandmother in lieu of day-care. The court's modification order was based on the Form 14 prepared by the trial court, and the court's Form 14 calculation and the child support order did not include Ms. Beal's claimed work related child care costs. Mr. Outley was ordered to pay $390 per month as child support.

### 1. Child Support Amount

■ Ms. Beal claims as point one that the trial court erred in awarding an amount of child support less than the amount calculated

pursuant to Rule 88.01 utilizing civil procedure Form 14 by not first making a finding that the amount required under Rule 88.01 is unjust or inappropriate.

The court prepared its own version of Form 14 and relied upon it when determining the parties' child support obligations. The court's order of April 15, 1994, which modifies the original judgment, acknowledges that Mr. Outley asked the court to consider when calculating on Form 14 that he has fathered another child who is in his custody. The court's order states "[t]he court will give Respondent the benefit of the doubt regarding consideration of other children and will deduct medical insurance." The completed Form 14 reflects Ms. Beal's gross monthly income of $900 per month and Mr. Outley's gross monthly income of $2252. No adjustments are reflected in item 2 of the form, and line 3 states an adjusted gross income of $3152. A zero sum is reflected in item 4.b., custodial parent's reasonable work-related child care costs, and the child support obligation from the schedule using the combined adjusted gross income reflects the sum of $611.32. Line 5, the combined child support costs, shows the sum of $551.32. The schedule of basic child support obligations effective commencing April 1, 1994, reflects that the child support required for two children whose parents have a combined adjusted gross monthly income of $3152 is $779. The court's Form 14 reflects a confusing notation near line 6, the percentage of proportionate shares of combined income, which states "($66.00/mos medical)." This notation may reflect an attempt to credit Mr. Outley for medical expenses for his third child, or it may reflect payments for medical expense insurance payments for his children, or some other payment. The record is unclear. The transcript of Mr. Outley's testimony discloses that his three children are covered by a medical insurance plan which provides medical treatment by an HMO. Eight-hundred dollars per month for the cost of such coverage is paid by a "flex" payment supplementing Mr. Outley's income.

The transcript of Mr. Outley's testimony records brief inconclusive evidence of Mr. Outley's financial obligation to support his

third child. The sum total of evidence regarding Mr. Outley's financial duty to support his third child is as follows:

> Question by his counsel: OK. Now, do you have any other children that you care for other than these two boys?
>
> A: Yes, I do.
>
> Q: Is that child in your actual custody?
>
> A: Yes.
>
> Q: Who is the child?
>
> A: That's my little girl, Brianna.
>
> Q: Brianna. OK. Do you provide for all of Brianna's care for her?
>
> A: Yes, 100 percent.
>
> Q: Now, I'm going to hand you first of all—well, I have this backwards. I'm going to hand you Respondent's Exhibit No. 7 and ask you if this is your statement of assets which we filed on January 12, 1994, setting out the assets that you own and your liabilities.
>
> A: Yes, that's the assets.
>
> Q: And you have a number of liabilities for medical care for Brianna; is that correct?
>
> A: Yes.

Respondent's Exhibit 7 discloses Mr. Outley's assets and debts, including several debts that may apply to the birth or medical treatment for his child, Brianna. However, the record does not sufficiently reflect the cause of these obligations.

■ The record does not support an award in the amount of child support required of the non-custodial parent. Although consideration can be given the financial support provided by Mr. Outley for his child in his primary custody, contemplated in line 2.c. of Form 14, the record must reflect what support he provides to his third child. The court cannot speculate when considering the financial support Mr. Outley provides to his third child when determining the amount he will pay for support of the two children in the primary custody of Ms. Beal. Additionally, the amount utilized on the Form 14 prepared by the court does not reflect the amount displayed by the applicable chart. The court did not make a specific finding on the record that the amount calculated by the chart for

the adjusted combined gross incomes of the parties "after consideration of all relevant factors, is unjust or inappropriate."

### 2. Day Care Costs

■ Ms. Beal asserts as point two that the court erred by failing to include day care costs. She claims that Rule 88.01 and Form 14 require the court to consider the cost of day care in calculating support obligations for her two children. Also, she contends the court erred in ordering that her son, D. Outley, cease attendance at his preschool/day care center and be placed with Mr. Outley's mother who would provide day care in lieu of the day care center.

■ Ms. Beal advocates that *Watkins v. Watkins*, 839 S.W.2d 745 (Mo.App.1992) requires the trial court to allocate for the custodial parent's reasonable work related child care costs when ciphering Form 14. In *Watkins*, the trial court found that no work-related costs were incurred by Ms. Watkins in the three months prior to the modification hearing. *Id.* at 748. On review, this court stated that Form 14 expressly provides for allocation of the custodial parent's reasonable work-related child care costs and that Rule 88.01 requires courts to award child support in conformity with Form 14 absent a finding on the record that an award of such an amount is unjust or inappropriate. *Id.* Although the trial court had found that no child care costs were incurred, this court determined that Ms. Watkins had demonstrated the need for work-related child care, observing that Ms. Watkins' job at a real estate office four and a half days per week precluded her return home until 6:30 or 7:00 p.m. each weekday evening. *Id.* at 749. Ms. Watkins also worked Saturday mornings. *Id.* This court said,

> The ages of the children, Ms. Watkins' necessary absence from the children during the hours her job demanded her presence, the absence of any continued available family baby-sitting or child care during those hours, and Ms. Watkins' lack of funds to pay for child care because of Mr. Watkins' failure to pay a reasonable amount as child support during the three

**642**

months before the modification hearing does not support the trial court's finding. *Id.* The absence of continuing available family baby-sitting or child care during the hours when Ms. Watkins' job required her absence from her children was a factor in determining Ms. Watkins' need for financial assistance to provide her children day care. Thus, by inference, although Form 14 provides for inclusion of reasonable work related child care expenses when determining child support requirements, the Supreme Court approved form does not divest trial courts of discretion when determining the need for work related child care expenses.

In this case, the trial court found that the children's paternal grandmother had previously provided adequate care for the children when their mother had worked and that the grandmother was willing to continue to provide care for the children while their mother worked. The only evidence in the record supports the trial court's finding, and the record is devoid of any evidence that such child care is inappropriate and that the trial court's finding was erroneous. Therefore, the trial court did not abuse its discretion in determining that an amount for care of the children during the time that Ms. Beal worked would not be a part of the custodial parent's reasonable work-related child care costs.

Ms. Beal contends that the trial court erroneously preempted her discretion by compelling her to place her child with its paternal grandmother when Ms. Beal works. She cites section 452.405.1, RSMo, 1994, which provides in part that the custodian of a minor child determines the child's "upbringing" absent a written agreement between the parents. The application of section 452.405.1 need not be determined. The trial court attempted to modify its order by granting discretion to Ms. Beal to place her child in a day care program at her expense, but the court lacked jurisdiction when it entered its order, the court attempting to modify its order more than thirty days after the order was entered in violation of Rule 75.01. Review of the record supports the trial court's effort to modify its order.

The judgment is reversed in part and the case is remanded to the trial court with directions to order that Mr. Outley shall pay as child support the amount provided by Form 14 or to make a finding, after further evidence is received, if the trial court deems appropriate, that payment of such sum by the non-custodial parent would be unjust or inappropriate pursuant to Rule 88.01. Additionally, the trial court is directed to modify its order which compels Ms. Beal to utilize the paternal grandmother for child care of her eldest son when Ms. Beal works by permitting Ms. Beal discretion as the primary custodial parent to place her child in such temporary day care as she deems appropriate absent judicial determination that such child care would or does pose a danger to the physical health or emotional development of the child.

All concur.