**Robert L. RICKLEFS, Appellant,**

v.

**Mary J. RICKLEFS, Respondent.**

**No. WD 58109.**

Missouri Court of Appeals,
Western District.

March 20, 2001.

Robert L. Ricklefs, Independence, Appellant pro se.

Anita I. Rodarte, Kansas City, Attorney for Respondent.

Before SPINDEN, C.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Robert L. Ricklefs appeals the judgment of the Circuit Court of Jackson County dissolving his marriage to the respondent, Mary J. Ricklefs, awarding prospective

and retroactive child support; awarding support for post-secondary educational expenses; and dividing the parties' marital and non-marital property.

The appellant raises six points on appeal. In Points I–III, he claims that the trial court erred in awarding prospective child support for three children of $977 per month,[1] beginning in January 2000, because in making its award it incorrectly calculated the requisite presumed child support amount (PCSA) pursuant to Missouri Civil Procedure Form No. 14 (Form 14).[2] In Point IV, he claims that the trial court erred in awarding $7,190 in retroactive child support because the award was not supported by substantial evidence and the required record was not made by the court as to its calculation of the arrearage. In Point V, he claims that the trial court erred in ordering him to pay 60% of each child's post-secondary educational expenses because in doing so, the court failed to consider, as required, his ability to pay such an award and the actual educational expenses of the children. In Point VI, he claims that the trial court erred in entering its judgment because, pursuant to § 452.330.6,[3] a full legal description of any real property awarded in a dissolution proceeding must be included in the judgment in that the court awarded the appellant the real property located at 6008 Laurel, Raytown, Missouri, but did not include in its judgment entry the legal description thereof.

We affirm in part, and reverse and remand in part.

## Facts

On February 14, 1976, the parties were married in St. Joseph, Buchanan County, Missouri. There were four children born of the marriage: Joseph R. Ricklefs, born June 1, 1979, who was emancipated at the time of trial; Justin S. Ricklefs, born April 23, 1983; John V. Ricklefs, born July 13, 1987; and Jenessa M. Ricklefs, born June 20, 1989.

During the course of the marriage, except for a brief six-month period of time, the respondent worked full time in health care. She provided the primary financial support for the family from 1978 through 1990. The appellant was employed at the time of marriage at a chemical company, but quit sometime in 1978 or 1979 to pursue a career as a professional musician. He subsequently attended college and received a bachelor's degree. He then attended law school, received his degree, was licensed, and began practicing in 1987. At the time of trial, the appellant worked as a sole practitioner, sharing office space with several other lawyers. His practice consisted of mainly personal injury, workers' compensation, and bankruptcy cases.

In June of 1997, the parties separated. On July 7, 1997, the appellant filed a petition for dissolution of marriage in the Circuit Court of Jackson County, Missouri. The respondent filed her answer and counter-petition on July 24, 1997. Both parties requested, *inter alia*, that the court dissolve the marriage, award custody of the children, and divide the parties' property and debts. The respondent waived any claim to maintenance.

1. Pursuant to the DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 12, Comment A, the trial court actually completed three Form 14s. The court completed a Form 14 Worksheet for three children, one for two children, and one for one child, finding the PCSA for three children to be $977 per month, for two children $848 per month, and for one child $620 per month, and entered support orders in accordance therewith. Because the claims of error raised by the

appellant as to child support would impact all three Form 14 calculations and orders in the same manner, for the sake of judicial economy, we will limit our discussion to the trial court's Form 14 calculation and award for three children only.

2. All references to Form No. 14 are to the Missouri Civil Procedure Forms (1999).

3. All statutory references are to RSMo 2000, unless otherwise indicated.

After the separation, the children remained in the custody of the respondent. The appellant exercised some visitation with them during the pendency of the dissolution. From July of 1997 through October of 1998, the appellant paid child support to the respondent in the amount of $840 per month. Thereafter, he reduced it to $620 a month from November of 1998 through the time of trial, April of 1999. It is unclear from the record whether he continued these payments for the period after trial until the judgment of dissolution was entered.

The case was heard on March 2, 1999, and April 22, 1999, after which the trial court took it under advisement. On December 29, 1999, the court entered its judgment dissolving the marriage. In its judgment, the court also awarded the parties joint physical and legal custody of the minor children, with child support to the respondent of $977 per month, commencing January 1, 2000. The trial court also ordered the appellant to pay retroactive child support in the amount of $7,190, after giving credit for the child support paid by the appellant during the pendency of the dissolution. The trial court further ordered the appellant to pay 60% of the minor children's post-secondary educational expenses and divided the parties' property and debts.

The respondent filed a motion to amend judgment or, in the alternative, for a new trial. On February 2, 2000, the court entered its amended judgment. The amendment concerned a clarification of the trial court's order with respect to payment by the appellant of child support for post-secondary educational expenses.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in awarding child support for three children of $977 per month, beginning January 1, 2000, because in making its award it incorrectly calculated the required PCSA pursuant to Form 14.

Specifically, the appellant claims that, although the court indicated on its Form 14 Worksheet that the Line 11 Overnight Visitation Adjustment (OVA) multiplier was 10%, the court's PCSA calculation reflects that it actually applied a multiplier of 6%. It appears that what the appellant is arguing is that, because the trial court indicated on its Form 14 that the OVA multiplier was 10%, it intended and was required to apply that multiplier in determining its Form 14 PCSA, and its failure to do so was error. For her part, the respondent contends that, from the record, it is clear that the trial court actually found the OVA multiplier to be 6% and used that figure in its Form 14 PCSA calculation, and that the entry of the 10% multiplier on the court's Form 14 was simply a "clerical error" which we can and should ignore. The issue then that is raised in this point is which OVA multiplier the trial court intended to use in its Form 14 calculation of the PCSA on which it ultimately based its award of child support.

We will affirm the trial court's award of child support unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo. App.2000) (citation omitted). "The trial court's award of child support will not be disturbed on appeal 'unless the evidence is "palpably insufficient" to support it.'" *Id.* (citations omitted). Assuming an award of child support is found to be supported by the evidence, "[a]n appellate court will interfere with the trial court's award [only] if the trial court abused its discretion by ordering an amount that is 'against the logic of the circumstances' or 'arbitrary or unreasonable.'" *Id.* (*quoting Gerhard v. Gerhard*, 985 S.W.2d 927, 930 (Mo.App. 1999)).

In determining an award of child support in any proceeding, the trial court

is required by § 452.340.8[4] and Rule 88.01[5] to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Nelson*, 25 S.W.3d at 520. First, the court must determine and find for the record the PCSA, in accordance with Form 14. *Woolridge*, 915 S.W.2d at 379. Second, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. *Id.* Here, despite the rebuttal terminology used by the trial court in the record and the appellant in asserting his claim, the claim raised in this point actually involves the issue of whether the trial court properly calculated the Form 14 PCSA, which is a *Woolridge* step one issue, not a rebuttal issue.

■■■■ In calculating the PCSA, as required in the first step of the *Woolridge* procedure, the trial court can either accept one of the Form 14 calculations of the parties or reject both calculations and do its own Form 14 Worksheet. *Nelson*, 25 S.W.3d at 521 (citations omitted). The record before us reveals that the trial court in determining the PCSA, rejected the parties' Form 14s and did its own, finding that the PCSA for three children was $977 per month, which amount it did not rebut and awarded child support accordingly. This was in keeping with the mandate that the court "must reject any Form 14 if any item is incorrectly included in the calculation, an amount of an item included in the calculation is incorrect, or the mathematical calculation is incorrect." *Samples v. Kouts*, 954 S.W.2d 593, 597 (Mo.App.1997) (*citing Woolridge*, 915 S.W.2d at 378). In completing its own Form 14 calculation, "the trial court only considers Form 14 Worksheet factors, the items which are properly included in the calculation and the correct amount of each, and does not take into consideration non-Form 14 factors." *Woolridge*, 915 S.W.2d at 379 (citations omitted). "In doing so, the court is to be guided by the worksheet's directions for completion and comments for use, and the evidence in the case." *Id.* "In determining whether the trial court correctly calculated the [PCSA], we review the calculation to ensure that not only [is it] done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Nelson*, 25 S.W.3d at 521 (citations omitted). Here, the appellant is claiming that the trial court's calculation of the PCSA was incorrectly computed from a mathematical standpoint in that it applied an OVA multiplier of 6% when, in fact, it had found on the record that it was 10%.

■■■■ In determining the PCSA, Civil Procedure Form No. 14, Line 11, provides for an "[a]djustment for a portion of amounts expended by the parent obligated to pay support during periods of overnight visitation or custody." In this regard, the DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 11, provide that the OVA shall be calculated by multiplying the basic child support amount (BCSA) determined on Line 5 of Form 14 by a percentage "based on the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay support under any order or judgment." In that regard, the following table of percentages is set forth in the DIRECTION, Line 11:

| % of Year | Number of Overnight Periods | Adjustment |
|---|---|---|
| | Less than 36 | 0% |
| 10%—20% | 36—72 | 6% |
| 20%—25% | 73—91 | 9% |
| 25%—30% | 92—109 | 10% |

---

**4.** The original statutory citation in *Woolridge* was to § 452.340.7. However, § 452.340 was amended in 1998, subsequent to the *Woolridge* decision, and § 452.340.7 was renumbered to § 452.340.8.

**5.** All rule references are to the Missouri Rules of Civil Procedure (1999), unless otherwise indicated.

Thus, pursuant to this table, for the 10% adjustment multiplier to apply, as contended for by the appellant, he would have to have been awarded 92—109 periods of overnight visitation or custody. For the 6% adjustment to apply, as contended for by the respondent, the appellant would have to have been awarded 36—72 periods of overnight visitation or custody.

The Form 14 Worksheet provides as follows as to the calculation of the Line 11 OVA: "ADJUSTMENT FOR A PORTION OF THE AMOUNTS EXPENDED DURING PERIODS OF OVERNIGHT VISITATION OR CUSTODY. (Multiply line 5 by _____%)." We read this as requiring the trial court to multiply the BCSA found on Line 5 of the worksheet by the OVA multiplier determined by the court from the overnight visitation and custody table set forth, supra. In that regard, the trial court's Form 14 in our case reflects the following entry at Line 11: "**ADJUSTMENT FOR A PORTION OF THE AMOUNTS EXPENDED DURING PERIODS OF OVERNIGHT VISITATION OR CUSTODY** (Multiply line 5 by 10% of $807.00, which is support for one child that specific parenting time is scheduled with)." This entry obviously reflects an OVA multiplier of 10%, as the appellant points out. However, when viewed *in toto*, the court's Line 11 entry simply cannot be reconciled with its Form 14 calculation in several respects. First, applying the 10% multiplier to $807, as stated in the court's Form 14, would mean that the trial court found the BCSA to be $807. However, the trial court's Line 5 BCSA calculation for three children was shown as $1,716. In addition, the reference to "support for one child that specific parenting time is scheduled with," does not coincide with the parenting plan adopted by the court, providing for overnight visitation and custody as to all three children. Finally, 10% of the BCSA found by the trial court, $1,716, does not compute to $103, the OVA actually found by the court and used in deter-

mining the PCSA. Other than it being a clerical error, as suggested by the respondent, we cannot ascertain any logical explanation from the record for the trial court's Line 11 entry reflecting an OVA multiplier of 10% being applied to a BCSA of $807.

The respondent argues that we should ignore the trial court's Line 11 entry as to the OVA multiplier being 10% and find that the court intended to apply a 6% multiplier as indicated by the fact that the court ultimately found the OVA to be $103, which is exactly 6% of the BCSA of $1,716 found by the court. While this seems a logical position to take, it flies in the face of the trial court's award of overnight visitation and custody on which the multiplier was to have been based.

To infer that the trial court found and intended to apply an OVA multiplier of 6%, as the respondent contends, we logically would have to find that it was supported by the record. *Nelson*, 25 S.W.3d at 521. As discussed, *supra*, the OVA multiplier is determined by the number of periods of overnight visitation or custody awarded to and exercised by the parent obligated to pay child support. The table for computing the multiplier, as set forth *supra*, reflects that a 6% multiplier is to be used when the number of overnight periods is 36—72. However, the trial court's judgment entry reflects that in even-numbered years, the children would spend approximately 86 periods of overnight visitation or custody with the appellant, and in odd-numbered years, approximately 92 periods. Thus, according to the table, based solely on the periods awarded, the appellant should have received a 9% adjustment for the even-numbered years and a 10% adjustment for the odd-numbered years. However, this does not tell the whole story inasmuch as the comments for Line 11 provide for several instances in which the OVA, based on the number of periods of

overnight visitation and custody awarded, can be "rebutted." [6]

As to rebutting the OVA in the trial court's Form 14 calculation of the PCSA, the comments to Line 11 provide, in pertinent part:

> In any proceeding to establish a child support order or to modify the support payable under an existing order, the adjustment on this line 11 may be rebutted if the parent obligated to pay support:
>
> (1) without fault of the parent entitled to receive support, does not exercise the periods of overnight visitation or custody with the children who are the subject of this proceeding awarded under any order or judgment. . . .

COMMENTS FOR USE OF FORM NO. 14, Line 11, Comment B(1). The respondent contends that this is what the trial court did here—rebutted the OVA multiplier, pointing to several pages in the transcript purporting to show that the appellant failed to regularly exercise visitation with the children prior to dissolution. The problem with the respondent's argument for rebutting an OVA multiplier of 10% is that there is nothing in the record before us to indicate that the visitation alluded to was court ordered, which is what is required by Comment B(1) in order to rebut the OVA multiplier found based on the overnight visitation and custody periods awarded.[7] Thus, contrary to the respondent's assertion, unless we are to assume that the trial court misapplied the law, as found in the Comments of the required Form 14 Worksheet for determining the OVA on Line 11, the record would not justify the trial court's rebutting downward the OVA multiplier from 9% or 10% to 6%.

Given the foregoing discussion, the record before us as to what the trial court actually found as to the OVA in calculating its Form 14 PCSA is ambiguous and confusing at best. On one hand we could simply apply the 10% multiplier that was found by the trial court on its worksheet and re-do the court's mathematical calculations so as to reflect the correct calculation of the PCSA. However, that would fly in the face of the fact that although the trial court's worksheet expressly reflects a 10% multiplier, its mathematical calculations would reflect that it applied a 6% multiplier. On the other hand, we could simply ignore the trial court's 10% OVA multiplier entry, treating it as a clerical error, and let stand the court's mathematical Form 14 calculation of the PCSA using 6%. However, that would fly in the face of the fact that, as discussed, *supra*, on the record we have before us, the 6% would not appear to be justified. Given this confusion over the OVA, we find that the record does not clearly indicate how the trial court arrived at its Form 14 PCSA amount. Thus, we are deprived of meaningful appellate review of the trial court's award of child support, and we must reverse the award and remand for the court to make the requisite Form 14 calculations and findings and enter its award in accordance therewith. *Woolridge*, 915 S.W.2d at 381–82.

## II.

In Point II, the appellant claims that the trial court erred in awarding child support for three children of $977 per month, beginning on January 1, 2000, because in making its award it incorrectly calculated and rebutted the PCSA. Specifically, he claims that the court's inclusion of $25 in work-related child care costs in its calcula-

---

6. Rebuttal in this context should not be confused with the rebuttal that occurs in step 2 of the *Woolridge* procedure. They are not the same. The first occurs in calculating the PCSA, step 1 of the *Woolridge* procedure. The second occurs in the second step of the procedure, *after* the PCSA has been correctly calculated.

7. In interpreting Comment B(1) as we do, we do not mean to suggest that the trial court is precluded from rebutting the PCSA as being unjust and inappropriate in step 2 of the *Woolridge* procedure based on circumstances surrounding overnight visitation which are not contemplated by the Comment for rebutting the OVA in the calculation of the PCSA.

tion of the PCSA was not supported by the evidence as an ongoing and continuous expenditure reflecting an added expense or need for child support. As to rebuttal, he claims that the trial court erred in rebutting its PCSA on two bases: (1) the trial court's PCSA was incorrectly calculated such that any rebuttal thereof was incorrect; and (2) in rebutting its PCSA, the trial court failed to make the required findings of § 452.340.9 to justify rebuttal. Having already determined in our discussion of Point I that the trial court did not rebut its Form 14 PCSA, we find no merit to the appellant's claims of error with respect to the court's purported rebuttal of its PCSA. As such, in this point we need only address the issue of whether the evidence supported the inclusion by the trial court of $25, as the respondent's work-related child care costs, in its Form 14 calculation of the PCSA. Applying the standard of review outlined in Point I, *supra*, we find that it did not.

As noted, *supra*, under Point I, "[i]n doing its own Form 14 calculation, '[t]he trial court determines which Form 14 items and their respective amounts are properly included in the calculation based on the Directions for Completion of Form 14 and the evidence presented.'" *Nelson*, 25 S.W.3d at 521 (citations omitted). As to work-related child care costs for the parent entitled to receive support, the DIRECTION, Line 6a, provides:

> Enter the monthly amount of any reasonable work-related child care costs incurred or to be incurred for the children who are the subject of this proceeding by the parent entitled to receive support.

The trial court has discretion to determine the need for work-related child care expenses. *Stufflebean v. Stufflebean,* 941 S.W.2d 844, 847 (Mo.App.1997) (*citing Beal v. Outley,* 897 S.W.2d 638, 642 (Mo. App.1995)). "Necessary child care expenses required by the custodial parent who is working or attending school must be considered in determining a child sup-

port award." *Id.* (*citing Raines v. Raines,* 583 S.W.2d 564, 568 (Mo.App.1979)). "Where a custodial parent establishes actual and necessary child care expenses incurred as a result of working or attending school, the expenses can be considered in calculating child support." *Id.*

On Line 6a of its Form 14, the trial court included work-related child care costs of $25 for the respondent. The respondent contends that this represented the cost of summer care for the parties' youngest child in the summer preceding the dissolution proceeding. In this regard, the respondent testified that she paid Justin for providing summer care for his sister by giving him a television, the cost of which, $300, when amortized over twelve months, resulted in monthly work-related child care expenses of $25 per month. Although the respondent's testimony would support the fact that this expense may have been a work-related expense for the summer in question, in order for it to be included in the trial court's Form 14 calculation determining prospective child support payments, it would have to be something more than a one-time expense such that future support was required therefor. *Brooks v. Brooks,* 871 S.W.2d 42, 45 (Mo. App.1993). In this regard, there is nothing in the record to indicate that the expense was to be reoccurring, as such the inclusion of the $25 of work-related child care costs in the trial court's Form 14 was not supported by the evidence and was error. Inasmuch as we are already reversing and remanding as to the trial court's child support award, the court can correct this error when it recalculates and enters its award on remand.

### III.

In Point III, the appellant claims that the trial court erred in awarding child support for three children of $977 per month because in making its award it misapplied the law in calculating the PCSA pursuant to Form 14. Specifically, he claims that the trial court's *imputation* to

him of $5,000 in gross monthly income for purposes of Form 14 was error in that: (1) it was not supported by the requisite threshold finding by the trial court that he was unemployed or underemployed; and, (2) it did not reflect an average of the "appellant's income over at least a three-year period."[8] Although we are already reversing and remanding the trial court's award of child support, because this issue is likely to arise again on remand, we choose to address it. In addressing Point III, we follow the same standard of review that was followed in Point I.

■ As discussed, *supra*, in determining child support, the trial court is required to follow the Form 14 Worksheet. *Woolridge*, 915 S.W.2d at 378. "A Form 14 calculation of the [PCSA] begins with a determination of each parent's gross monthly income." *Honderick v. Honderick*, 984 S.W.2d 205, 212 (Mo.App.1999). In this respect, the DIRECTION, Line 1, provides:

> "Gross income" includes, but is not limited to, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, military allowances for subsistence and quarters, and maintenance actually received.

The Direction further provides: "[i]f a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income."

> What constitutes the appropriate circumstances to impute income will depend on the facts and must be deter-

mined on a case-by-case basis. Cases involving issues of imputation of income necessarily require the exercise of the sound discretion of the trial court and cannot be considered a mechanical process.

*Pelch v. Schupp*, 991 S.W.2d 729, 734 (Mo. App.1999) (citations omitted).

> When imputing income to a parent, consideration is given to his or her past and present earnings and anticipated future earning capacity. A party may not escape his or her child support obligation by voluntarily declining to work, by deliberately limiting his or her work to reduce income, or by otherwise disabling himself or herself financially. A court may impute income to a party according to what he or she could have earned by the use of his or her best efforts to gain employment suitable to his or her capabilities. However, an award of child support must be supported by evidence of the party's ability to pay.

*Honderick*, 984 S.W.2d at 212 (citations omitted).

We would first note that there is some question from the record whether, in fact, the trial court "imputed" income to the appellant in its Form 14 calculation of the PCSA. For the record, the trial court found that the appellant had "under reported his income" and was "capable of earning a monthly gross income of $5,000," which is the amount it entered as the appellant's Form 14 gross monthly income. Logically, "under reporting income" is not the same as being "unemployed" or "underemployed." The latter two designations would cover situations where the parent has voluntarily refused to work at all or has reduced his or her employment in an attempt to avoid child support, *Jones v.*

---

**8.** In Point III, the appellant also claims that the "trial court erred by imputing income of $5,000 per month to appellant for the purpose of calculating child support" because in doing so it did not consider his ability to pay. The ability to pay child support is a "rebuttal" issue and is not related to the "rejection" issue of the imputation of income challenged

by the appellant in Point III. *Woolridge*, 915 S.W.2d at 378–79. Thus, we need not consider it on appeal. Rule 84.04(d)(1)(C); *Lamar Adver. of Mo., Inc. v. McDonald*, 19 S.W.3d 743, 745 (Mo.App.2000) (holding that issues which are unrelated to the challenged ruling of the trial court are not preserved for appellate review).

*Jones,* 958 S.W.2d 607, 612 (Mo.App.1998), whereas the "under reporting of income" would cover a situation where the parent may be sufficiently employed, but has hidden the true extent of his or her income earned therefrom in an attempt to avoid child support. Unlike in the case of being unemployed or underemployed, in the case of underreporting, the trial court would simply be presented with the issue of how much the parent in question was actually earning, as opposed to what he or she was reporting, in determining the parent's Form 14 gross monthly income. Thus, any finding as to the appellant being unemployed or underemployed would be irrelevant as to a case of underreporting.

Even assuming that this was a case of imputation based on the trial court's belief that the appellant was unemployed or underemployed, as the appellant contends, he cites no authority and we cannot find any to support his contention that the trial court was required to make an express finding for the record that he was unemployed or underemployed as a precursor to "imputing" income to him of $5,000. The DIRECTION, Line 1, as to imputation of income simply provides: "If a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income." In addition, the record reflects that the appellant did not make a request for findings of fact and conclusions of law, pursuant to Rule 73.01(c). As such, whether the trial court here made an express finding for the record that the appellant was unemployed or underemployed would not have any bearing on whether it erred in applying the law in "imputing" income to the appellant in its Form 14 calculation of the PCSA, as the appellant contends.[9]

■ We next turn to the appellant's contention that the trial court misapplied the law in that it was required to average his income for the prior three years to determine the amount of income to "impute" to him for purposes of Form 14 and that the record reflects that it failed to do so. In this regard, Line 1, Comment H, provides, in pertinent part:

H. *COMMENT:* **Imputed Income:** When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:

(1) the parent's probable earnings based on the parent's work history during the three years, *or such time period as may be appropriate,* immediately before the beginning of the proceeding and during any other relevant time periods....

(Emphasis added.) Any fair reading of this comment would indicate that a trial court, in determining the amount of income to impute to a party in its Form 14 PCSA calculation, is not required in every instance to average the party's prior three years of income. In determining probable earnings, the trial court may rely on any time period as may be appropriate under the circumstances.[10] Thus, even assuming the trial court did not average the appellant's income for the last three years immediately preceding the dissolution pro-

---

9. Although not stated in his point relied on, the appellant contends in his argument of Point III that there was no substantial evidence to find that he was unemployed or underemployed on which to base an imputation of income. We are only required to address those claims raised in the point relied on. *State v. York,* 931 S.W.2d 185, 189 (Mo.App.1996). Hence, we decline to address the issue of whether there was substantial evidence to support a finding by the trial court that the appellant was unemployed or underemployed.

10. Although not in the context of imputation of income, this court stated in *Laubinger v. Laubinger,* 5 S.W.3d 166, 178–179 (Mo.App.1999):

In determining the respondent's gross monthly income for purposes of calculating the [PCSA], the trial court was free to consider both his past and present earnings to determine an average that was consistent with historical earnings and representative of future earnings. *In re Marriage of Glueck,* 913 S.W.2d 951, 955 (Mo.App. 1996). Likewise, the court, in its discretion, could have chosen to ignore his in-

ceeding in "imputing" to him monthly gross income of $5,000, it was not a misapplication of the law as claimed by the appellant.[11]

Point denied.

## IV.

In Point IV, the appellant claims that the trial court erred in awarding $7,190 in retroactive child support to the respondent because: (1) the award was not supported by substantial evidence in that the trial court did not properly credit him for child support he had paid through the end of trial; and, (2) the court misapplied the law in that it did not make the required record as to its calculation of the arrearage. Absent special circumstances, the determination of an award of retroactive child support, pursuant to § 452.340, is contingent on the amount of the trial court's child support award for prospective child support. Given this fact and inasmuch as we are reversing and remanding the trial court's award of prospective child support for other reasons, the trial court's award of retroactive support may have to be recalculated and amended on remand if the court's award of prospective support is ultimately amended. Hence, any review of the trial court's present award of retroactive support would be premature.[12]

## V.

In Point V, the appellant claims that the trial court erred in ordering him to pay

come history and look at his income from a single year, if it found that amount to be an accurate predictor of his income. *Samples v. Kouts*, 954 S.W.2d 593, 598 (Mo.App. 1997). Alternatively, the trial court could have chosen to look to his future earning capacity to determine his ability to support the children in his custody. *Morris v. Morris*, 951 S.W.2d 739, 742 (Mo.App.1997). This is in keeping with the Form 14 Worksheet Comment allowing the trial court to consider any "time period as may be appropriate" in imputing income, rather than requiring three-year averaging in every instance.

11. In his point relied on, the appellant did not attack the sufficiency of the evidence to support a finding that his gross monthly income was $5,000 per month for purposes of Form 14, such that the issue was not preserved for review. *York*, 931 S.W.2d at 189. Even if it had been, our review of the record would indicate that there was sufficient evidence from which the trial court could have found that he had gross monthly income of $5,000.

12. In its judgment, the trial court ordered the appellant to pay child support for three children of $977 per month starting January 1, 2000. The petition was filed in July of 1997. Thus, pursuant to § 452.340, on the effective date of the judgment, thirty months had elapsed. Multiplying thirty months by $977 would result in the appellant owing $29,310 in retroactive child support, less any amounts the court found he had paid in support for that period of time. However, the appellant's claim in this point is premised on only 22 months of retroactive support, the period of time from the filing of the petition through the end of trial, July 1997 through April 1999, which would render a total retroactive child support obligation of only $21,494 (22 months × $977). As to the credit for child support already paid, the appellant contends, and the respondent concedes, that through April 1999, the appellant had paid $17,160 in support, which was computed, based on the payment of temporary support through April 1999, as follows: 16 months at $840 per month = $13,440; and 6 months at $620 per month = $3,720. Crediting the $17,160 against the $21,494 that the appellant contends was the total amount of retroactive support owed, would result in a retroactive award of $4,334, rather than the $7,190 awarded by the trial court. However, the respondent points out that there should have been an additional eight months of support of $620 per month from the end of trial until the effective date of the trial court's award of child support commencing January 1, 2000. Thus, assuming this to be true, the appellant would have paid an additional eight months of temporary support, at $620 per month, from the time of trial to the time the new support order became effective, for a total of $4,960 in additional child support paid which would also have to have been credited against the retroactive support owed. Adding the two figures of temporary support paid, $4,960 and $17,160, would result in the appellant having paid a total of $22,120 in temporary child support during the pendency of the dissolution, which when subtracted from the retroactive obligation for thirty months, $29,310, would result in a retroactive child support due and owing of $7,190, which was exactly the award ordered by the trial court.

60% of each child's post-secondary educational expenses because in doing so, the court failed to consider, as required, his ability to pay such an award and the actual educational expenses of the children. We disagree.

Section 452.340.5 provides that the child support obligation of a parent shall continue for a child enrolled in an institution of vocational or higher education, provided certain conditions are met, until age twenty-two or until the child's education is complete, whichever occurs first. Thus, the payment of the reasonable expenses of a child, for whom an obligation of support is owed, for attending such an institution has been found to be a form of child support. *In re Marriage of Eskew*, 31 S.W.3d 543, 546 (Mo.App.2000) (citations omitted). However, such expenses are not included in the calculation of the BCSA, as determined at Line 5 of the Form 14 Worksheet. *Williams v. Williams*, 11 S.W.3d 728, 732 (Mo.App.1999). Although not included in the calculation of the BCSA, Line 6e: Other extraordinary child-rearing costs, Comment A, provides, in pertinent part:

> Post-secondary educational expenses and private or parochial elementary, middle and high school expenses are *not* included in the schedule of basic child support obligations; therefore, these expenses *may be* included in Form No. 14 as an "other extraordinary child-rearing cost" if the parents agree or the court orders that the parents contribute to payment of these expenses.

(Emphasis added.) Thus, the court, in its discretion, may include post-secondary educational expenses in its calculation of the PCSA. The trial court here chose not to do that, however. Instead, it entered a separate order of support with respect to such expenses, ordering, "Petitioner shall pay sixty (60%) percent of the cost each year for each minor child's attending a post-secondary college, university, or vocational/technical school, state or private...."

In *Shiflett v. Shiflett*, 954 S.W.2d 489, 493–94 (Mo.App.1997), this court recognized that the trial court must consider qualified college expenses in determining its award of child support. However, it further recognized that, under the applicable directions and comments for completing the Form 14 Worksheet, the inclusion of such expenses as "other extraordinary child rearing costs" in the trial court's calculation of the PCSA was discretionary. *Id.* As such, the court opined, citing *DeCapo v. DeCapo*, 915 S.W.2d 343, 346–47 (Mo. App.1996); *Mistler v. Mistler*, 816 S.W.2d 241, 254–55 (Mo.App.1991), that as an alternative to including the child's post-secondary educational expenses in the trial court's Form 14 calculation of the PCSA, the court could first rebut the PCSA by finding that it was unjust and inappropriate and then adjust it upward to include a "just amount for college expenses to the child support award otherwise determined." *Shiflett*, 954 S.W.2d at 493–94. These two alternatives for ordering a parent to pay a percentage of a child's post-secondary educational expenses have been recognized by all three districts of the Missouri Court of Appeals, both before and after the effective date of the present version of Civil Procedure Form No. 14, October 1, 1998. *See Douglas–Hill v. Hill*, 1 S.W.3d 613, 619 (Mo.App.1999); *Halupa v. Halupa*, 980 S.W.2d 325, 329 (Mo.App. 1998); *Webb v. Fox*, 978 S.W.2d 16, 21 (Mo.App.1998); *Shiflett*, 954 S.W.2d at 493–94; *Crews v. Crews*, 949 S.W.2d 659, 668 (Mo.App.1997); *DeCapo*, 915 S.W.2d at 346–47; *Mistler*, 816 S.W.2d at 254–55. However, unlike the prior version of Form 14, the present version of the form contains the following caveat:

> **CAVEAT:** *A finding by the court or administrative agency that the presumed child support amount is unjust or inappropriate is not necessary where the parent obligated to pay support is also ordered to pay **any** percentage of the other extraordinary child-rearing costs of the children who are the subject of the proceeding.*

COMMENTS, Line 6e, Comment A. This comment indicates that "rebuttal" of the PCSA is unnecessary as an alternative for awarding child support for post-secondary educational expenses. Accepting this as fact and accepting as fact that the trial court is *required* to consider post-secondary educational expenses in awarding support and *may* include, but is not required to include, such expenses in its Form 14 calculation of the PCSA as other extraordinary child-rearing costs, leads us to conclude that Comment A contemplates, as a third alternative, a separate order of support for post-secondary educational expenses in lieu of including them in the trial court's Form 14 calculation or rebutting the Form 14 PCSA.

The change, created by the caveat concerning "other extraordinary child-rearing costs" in the alternatives available to the trial court in awarding child support for post-secondary educational expenses, is logical inasmuch as many times such expenses are not present expenses, but future expenses triggered upon enrollment at a later date such that they cannot be reflected as part of a Form 14 calculation of the PCSA or a rebuttal thereof. Recognizing the unique nature of post-secondary educational expenses as a component of child support, it makes perfect sense to us that, as an alternative to including such expenses in the trial court's Form 14 PCSA calculation or a rebuttal thereof, the present Form 14 scheme adopted by the Missouri Supreme Court envisions a separate order of support. Having determined that a separate order of support for post-secondary educational expenses is authorized, we now turn to the issue of whether the trial court's separate order of support for such expenses in this case is supported by the record.

■ In our review of an award of child support for post-secondary educational expenses, we recognize that:

[t]he trial court is in the best position to determine the financial capability of a parent to assist in the support of the parent's child, including college expenses. Deference will be given to the trial court's determination, viewing evidence and permissible inferences in [a] light most favorable to the decree and disregarding all contrary evidence and inferences.

*DeCapo*, 915 S.W.2d at 348–49 (citations omitted). "We defer to the trial court's judgment on [an] award of . . . educational expenses unless the evidence is 'palpably insufficient' to support it." *Douglas–Hill*, 1 S.W.3d at 620 (*citing Markowski v. Markowski*, 793 S.W.2d 908, 909–10 (Mo.App. 1990)). If supported by the evidence, we will only reverse if the trial court has abused its discretion in entering its award. *Nelson*, 25 S.W.3d at 520.

■ The appellant claims that in entering its separate order and award of support for college expenses, the trial court was required, but failed, to consider his ability to pay such an award and the expenses the respondent would incur for the children's post-secondary education. We recognize that a parent's ability to pay and a child's needs are factors in determining whether to order the parent to pay a percentage of a child's post-secondary educational expenses. *Shiflett*, 954 S.W.2d at 494. However, the appellant points to nothing in the record that would indicate that the trial court did not consider these factors in ordering him to pay 60% of any college expenses incurred by the parties' three unemancipated minor children. To the contrary, in its judgment, the trial court stated:

[t]he Court has considered the evidence presented by the parties relating to the duty of each party to contribute to the support of the minor child. The Court has considered all relevant factors, including, but not limited to: a. The financial needs and resources of the child; and b. The financial needs and resources of the parents. . . .

In support of his claim, the appellant simply states that there was no evidence at

trial as to his ability to pay and the needs of the children with respect to their post-secondary educational expenses. Thus, he fails in his burden on appeal as to this point. *DeCapo,* 915 S.W.2d at 349.

Before leaving this point as to the appellant's ability to pay the trial court's award of child support for post-secondary educational expenses, we would further note that given the fact that none of the parties' children were enrolled in college at the time of trial and judgment, the exact amount of the expenses that would be incurred and payable by the appellant under the court's order is unknown. However, the appellant readily concedes that, in any event, he had agreed to pay 50% of any such expenses and makes no claim that the court's order was too vague and uncertain to be enforceable. *See Echele v. Echele,* 782 S.W.2d 430, 437 (Mo.App.1989) (setting out the requirements for an order for the payment of post-secondary educational expenses to be enforceable as not being too vague and uncertain). The record is replete with evidence concerning the parties' income and expenses from which the trial court could have determined that the appellant had the ability to pay 60% of the post-secondary educational expenses of the parties' children.

Point denied.

## VI.

In Point VI, the appellant claims that the trial court erred in entering its judgment because, pursuant to § 452.330.6, a full legal description of any real property awarded in a dissolution proceeding must be included in the judgment in that the court awarded the appellant the real property located at 6008 Laurel, Raytown, Missouri, but did not include in its judgment entry the legal description thereto. Although the respondent concedes that the trial court's amended judgment did not include a legal description of the property in question, she contends that by the appellant's requesting and receiving a quit-claim deed from her for the property, the appellant was "estopped from pursuing the appeal as to this issue."

Section 452.330.6 provides:

A certified copy of any decree of court affecting title to real estate may be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situated by the clerk of the court in which the decree was made.

Section 452.330.6 does not expressly mandate the inclusion in a dissolution decree of the full legal description of property awarded therein. However, in *Douglas–Hill,* 1 S.W.3d at 621–22, this court, citing *Lance v. Lance,* 979 S.W.2d 245, 248 (Mo. App.1998) and *Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 785 (Mo.App.1998), and without mentioning the statute, recognized the rule that a dissolution decree is to include the full legal description of real property awarded in a dissolution proceeding. *See also Fields v. Fields,* 584 S.W.2d 163, 167 (Mo.App.1979). In doing so, the court stated that "[t]he reason for the rule ... is to ensure that the filing of the dissolution decree with the recorder of deeds is effective in dispelling future questions as to land title." *Douglas–Hill,* 1 S.W.3d at 622 (citation omitted). As here, the respondent argued in *Douglas–Hill* that the failure to comply with the rule was not an issue in dispute on appeal inasmuch as quit-claim deeds had been filed with respect to the real property that was awarded. *Id.* at 621. This court paid no deference to this argument, holding that "[t]he trial court erred as a matter of law by failing to set forth the legal description," and ordered the court on remand to set forth the full legal description of the real property awarded in its decree. *Id.* at 622.

In the case at bar, the trial court, in its amended judgment, ordered, *inter alia:*

IT IS FURTHER ORDERED that all right, title and interest in and to the following parcel of marital real property is hereby vested in and to the Petitioner

as his sole and separate property, free of any claim by the Respondent:

The property located at 6008 Laurel, Raytown, MO, with an equity value of $5,600.00, is legally described as:

**LEGAL DESCRIPTION NOT IN EVIDENCE**

Respondent shall by Quitclaim Deed transfer her interest in this marital property to Petitioner. Respondent shall also execute such other paperwork as is required to transfer ownership of this property into the name of the Petitioner.

Contrary to the decree, the appellant contends and the respondent concedes, however, that the description was in evidence via the admission of his statement of marital and non-marital assets and debts, in that the statement included the full legal description of the Raytown property. Thus, pursuant to our holding in *Douglas–Hill,* we find that the trial court here erred in failing to include in its judgment a full legal description of the Raytown property awarded to the appellant and that on remand, the court is to include the same in its decree.

### Conclusion

The judgment of the circuit court dissolving the marriage of the parties is affirmed in all respects except its award of prospective and retroactive child support, which is reversed and remanded for further proceedings consistent with this opinion. Further, on remand, the court is directed to include in its amended judgment the full legal description of any real property awarded to the parties.

SPINDEN, C.J., and NEWTON, J., concur.