STATE of Missouri, ex rel. Michelle
STIRNAMAN, Respondent,

v.

Jeffrey J. CALDERON, Appellant.

No. WD 59928.

Missouri Court of Appeals,
Western District.

Submitted Dec. 5, 2001.

Decided Jan. 29, 2002.

**638**

Gary Michael Steinman, Gladstone, for appellant.

Curtis Glenn Eylar, Kansas City, for respondent.

Before JAMES M. SMART, JR., P.J., HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Appellant Jeffrey Calderon appeals the judgment modifying his child support obligation. Calderon raises one point on appeal, arguing that the trial court erroneously computed the child support obligation and, thus, the judgment was against the weight of the evidence, was unsupported by the evidence, and was an abuse of discretion. We affirm the judgment.

### Facts

Mr. Calderon and Ms. Stirnaman were married in February 1988, and the marriage was dissolved in September of 1990. There were two children born of the marriage: Michael A. Calderon, d/o/b August 23, 1988, and Alyssa N. Calderon, d/o/b March 26, 1990. The divorce decree required Mr. Calderon to pay child support in the amount of $226.00 per month. That amount was modified by a judgment for modification in May of 1995, increasing the child support obligation to $400.00 per month.

Subsequently, Division of Child Support Enforcement (DCSE) of the Department of Social Services entered an order modifying the child support obligation, decreasing the amount to $309.00 per month, commencing July 1, 2000. A trial de novo was requested on behalf of Mr. Calderon. Ms. Stirnaman filed a counter-motion to modify child support.

At trial, evidence was presented that Calderon has a high school education plus some junior college courses. His primary background is in the restaurant business. Calderon considers himself a computer consultant. Evidence was presented to show Calderon's adjusted gross income was as follows: 1997—$24,094.00; 1998—$14,578.00; 1999—$2,788.00. At the time of trial in late February of 2000, Calderon had earned $500.00 dollars for the year. There was additional evidence that in 1997, $7,500.00 of his income came from a one-time transaction to set up a computer system, as a result of a referral from his parents.

At trial, the evidence also showed that his new wife, who pays all of the living expenses, supported Mr. Calderon. Cal-

deron testified that anywhere from $10,000.00 to $40,000.00 per month is deposited in their joint checking account. He enjoys the authority to draw upon that account at his discretion. Calderon's current business was started shortly after the instant cause of action arose, and he does not know when the business might become profitable. The record does not show that there are any economic pressures on him to make the business profitable. There was no testimony that Calderon could not draw upon his previous job experiences in the restaurant business or the computer field to find gainful employment. Nothing in the record indicates that there is any reason Calderon could not be gainfully employed.

The parties did not request specific findings of fact and conclusions of law. The trial court entered his judgment, finding that Calderon had the ability to earn $2052.00 per month or $24,624.00 per year. The court used that figure for the Form 14, resulting in a support amount of $543.00. The trial court found that the resulting obligation was not unjust or inappropriate and ordered the amount as the child support obligation, beginning January 1, 2001. This appeal followed.

■ An appellate court will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001). A judgment will be set aside on the basis that it is against the weight of the evidence only with caution and when there is a firm belief that the trial court's judgment is wrong. *Id.* (citing *Morton v. Myers*, 21 S.W.3d 99, 104 (Mo.App.2000)). "An award of child support is within the sound discretion of the trial court." *Thill v. Thill*, 26 S.W.3d 199, 207 (Mo.App.2000).

"We afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision." *Morton*, 21 S.W.3d at 104. Thus, " '[w]e will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is "palpably insufficient" to support it.' " *Haden*, 37 S.W.3d at 860 (*quoting Thill*, 26 S.W.3d at 207).

■ Calderon argues "[t]he trial court's imputation to Appellant of $2,052.00 in gross monthly income for purposes of Form 14 was error in that: (1) it was not supported by the requisite threshold finding by the trial court that he was unemployed or underemployed; and, (2) it does not reflect an average of the Appellant's income over at least a three-year period." This court was faced with a similar allegation of error in *Ricklefs v. Ricklefs*, in which the appellant claimed that:

[T]he trial court's *imputation* to him of $5,000 in gross monthly income for purposes of Form 14 was error in that: (1) it was not supported by the requisite threshold finding by the trial court that he was unemployed or underemployed; and, (2) it did not reflect an average of the "appellant's income over at least a three-year period."

39 S.W.3d 865, 873–74 (Mo.App.2001). In rejecting the claim that there is an expressed requisite threshold finding of unemployment or underemployment before income can be imputed, this court stated:

Even assuming that this was a case of imputation based on the trial court's belief that the appellant was unemployed or underemployed, as the appellant contends, he cites no authority and we cannot find any to support his contention that the trial court was required to make an express finding for the record

that he was unemployed or underemployed as a precursor to "imputing" income to him of $5,000.

*Id.* at 875. We further noted in *Ricklefs* that the record did not reflect a request for findings of fact and conclusions of law pursuant to Rule 73.01(c). "As such, whether the trial court here made an express finding for the record that the appellant was unemployed or underemployed would not have any bearing on whether it erred in applying the law in 'imputing' income to the appellant in its Form 14 calculation of the PCSA,[1] as the appellant contends." *Id.*

Calderon, like *Ricklefs*, has failed to direct our attention to any case holding that there must be an express finding for the record that he was unemployed or underemployed as a precursor to imputing income. Likewise, in the instant case, there was no request by either party for findings of fact and conclusions of law. As in *Ricklefs*, it is our belief that without such a request, the lack of an express finding for the record of Calderon's unemployment or underemployment does not have a bearing on whether the trial court erred in applying the law when it imputed income to Mr. Calderon.

■ Similarly, this court rejected Ricklefs' claim that the trial court must use a three-year average of income when imputing income to a party. In analyzing Line 1 of Comment H of Form 14, we stated:

> Any fair reading of this comment would indicate that a trial court, in determining the amount of income to impute to a party in its Form 14 PCSA calculation, is not required in every instance to average the party's prior three years of income. In determining probable earnings, the trial court may rely on any time period as may be appropriate

under the circumstances. Thus, even assuming the trial court did not average the appellant's income for the last three years immediately preceding the dissolution proceeding in "imputing" to him monthly gross income of $5,000, it was not a misapplication of the law as claimed by the appellant.

*Id.* at 875–76 (footnotes omitted). Thus, we find no error by the trial court in failing to use a three-year average of Mr. Calderon's income.

■ To the extent Calderon argues that there was insufficient evidence or that it was against the weight of the evidence for the trial court to impute income to him, we disagree. Imputed income is used to prevent a parent from escaping responsibilities to support a child or children by deliberately reducing their income. *Walker v. Walker*, 936 S.W.2d 244, 247 (Mo.App. 1996). "In order to avoid such a situation, a court may, in proper circumstances, impute income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Id.* (*quoting Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App.1994). In *Thomas v. Thomas*, 989 S.W.2d 629, 635 (Mo.App.1999)), the court stated:

> "Proper circumstances" have been considered to include situations where a parent has voluntarily reduced his or her income without justification. *Devries v. Devries*, 804 S.W.2d 825, 827 (Mo.App. W.D.1991). Also included are situations where a parent involuntarily lost a job but (1) failed to use his or her best efforts to obtain a new job, *In re Marriage of Garrison*, 846 S.W.2d 771, 776 (Mo.App. S.D.1993); (2) refused to accept employment offers, *Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App.1993);

---

1. Presumed child support amount (PCSA).

or (3) failed to show that the unemployment was other than temporary, *Foster v. Foster*, 844 S.W.2d 559, 562 (Mo.App. E.D.1992). *Walker*, 936 S.W.2d at 247–48.

Here, the evidence showed that Calderon did not try to obtain a job in another field even though he had experience in the restaurant business. Nor did the evidence indicate that he tried to obtain employment in a computer related field. Rather, he chose to start his own business. He has no idea when, if ever, the "business" will become profitable. The trial court was entitled to consider the fact that his spouse's income apparently relieved Calderon of the need to earn a living. The trial judge could reasonably have viewed the "business" as more of a hobby than a serious attempt to earn a living. Accordingly, there was evidence from which the court could reasonably have regarded this as an instance of voluntary underemployment.

The respondent also suggests that instead of imputing income to him, the court could have considered the income available to him through his wife. *See, e.g., In re Marriage of Petersen*, 22 S.W.3d 760, 765 (Mo.App.2000). However, because the trial court in this case imputed income to him, and did not err in doing so, we need take our inquiry no further. The trial court did not err in imputing income to Mr. Calderon in the amount of $2,052.00 per month as representing the amount he was capable of earning. Point denied.

LOWENSTEIN and ELLIS, JJ., concur.